Frederick JACKSON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19545.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 10, 1965.

Decided April 5, 1966.

Petition for Rehearing En Banc
Denied May 12, 1966.

J. Skelly Wright, Circuit Judge, dissented.

Mr. Charles H. Mayer, Washington, D. C. (appointed by this court), for appellant.

Mr. James A. Strazzella, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Joel D. Blackwell, Asst. U. S. Attys., were on the brief, for appellee.

Before WRIGHT, McGOWAN and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

This appeal is from a judgment on a verdict of guilty of robbery, D.C.Code § 22–2901.

Though counsel for appellant, appointed by this court, has developed and forcefully presented three contentions for our consideration, we find that neither separately nor in combination do they constitute grounds of reversal.

### I

We begin by considering, and rejecting, the contention that the evidence was not sufficient to submit the case to the jury on the charge of robbery. The complaining witness testified that before leaving home to go to church on the morning of November 15, 1964, she counted the money in her wallet, which contained a five dollar bill folded in a particular manner, a Kennedy half dollar, five quarters, five dimes, one penny and three bus tokens on a safety pin. She was waiting at a bus stop among a number of other people when someone yelled that a man had snatched her wallet out of her bag. She looked down and saw her pocketbook open and her wallet missing. She turned just at that moment and saw a man, whom she identified at trial as appellant, running from the scene. A number of persons at the bus stop called out, "That is him that is running."

Appellant, who admitted being at the bus stop, was easily identifiable by a distinctive tam hat. The victim, as well as several other bystanders, immediately began to pursue appellant. One of his pursuers testified that appellant, when cornered at one point, first offered him money, and then threatened that appellant's "boys" would "take care" of him. Appellant managed to get away, but was finally captured, after a struggle, by an off-duty police officer with the aid of that pursuer.

Appellant was found to have in his possession one five dollar bill, folded in a peculiar manner, and identified at trial as the one that had been in the victim's pocketbook, seven or eight one dollar bills which were apparently his own, five dimes and at least five quarters, a sole Kennedy half dollar, a single penny and three bus tokens on a safety pin. The wallet and the personal papers it contained were never recovered.

Appellant testified in his own behalf that he too was pursuing the real thief, offering a description coinciding with that given by the victim for a man who had fled behind appellant. Appellant claimed that the real thief had dropped the five dollar bill and the tokens on a pin and appellant had picked up the items while continuing the chase.

Appellant argues that the evidence only warranted a submission to the jury of a larceny charge, and that there was insufficient evidence of a taking from the person or immediate actual possession of the victim. Appellant relies on Hunt v. United States, 115 U.S.App.D.C. 1, 316 F.2d 652 (1963). *Hunt* was an unusual case where there was a reasonable inference, from the proven jostling of the victim by the crowd, that the pocketbook opened and the wallet fell out. Here there was a group of people around the bus stop, but no evidence of any jostling or pushing of the victim, and no proven factual circumstances from which it could be inferred, by some reasoning going beyond mere speculation, that the wallet

had fallen. Graves v. United States, 115 U.S.App.D.C. 294, 318 F.2d 265 (1963). In addition, there is the unchallenged testimony by the victim that someone actually saw the defendant take the wallet out of the victim's purse. That testimony is hearsay, says appellant. But the victim was on the stand and could testify as to the yelling and calling she heard since these were spontaneous exclamations admissible within a well-known exception to the hearsay rule, sometimes referred to by the catch-all "res gestae" phrase. See 6 Wigmore, *Evidence* § 1755 (3d ed., 1940), and cases cited.

■ The sufficiency of the evidence is manifest when this testimony is coupled with the evidence that appellant was at the bus stop and was found to have the stolen money in his possession.

## II

The statute provides, D.C.Code § 22–2901:

> Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery * * *.

The indictment reads:

> On or about November 15, 1964, within the District of Columbia, Frederick Jackson, by force and violence and against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of Martha J. Ray, property of Martha J. Ray.

Our conclusion above that there was evidence of commission of the crime is plainly based on the evidence showing a "sudden or stealthy seizure or snatching." But those critical words, notes appellant, were omitted from the indictment. It was therefore error, he claims, for the trial judge to instruct the jury that they could find defendant guilty of robbery if they found the defendant had taken Mrs. Ray's purse by sudden or stealthy seizure or snatching.

■ The probability that the omission in the indictment was an unfortunate slip of the pen would not bar reversal if a substantial right of appellant were denied. We do not think that was the case. A defendant may not be tried for a crime with which he was not charged. And the indictment must adequately set out allegations amounting to a crime. See Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), dismissing an indictment lacking a critical element. Here, however, the indictment obviously is not subject to dismissal.

The indictment alleged the critical element of the crime, a taking "by force or violence." Such taking can be against resistance. Or it can be by stealthy snatching. The common law crime of robbery did not include stealthy snatching, but the statute expands the definition of the crime. Neufield v. United States, 73 App.D.C. 174, 189, 118 F.2d 375, 390 (1941), cert. denied, sub nom. Ruben v. United States, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199 (1942). Thus, in a pickpocket robbery case this court has made it clear that "the requirement for force [in the robbery statute] is satisfied by an actual physical taking of the property from the person of another, even though without his knowledge and consent, and though the property be unattached to his person." Turner v. United States, 57 App.D.C. 39, 16 F.2d 535 (1926). In Spencer v. United States, 73 App.D.C. 98, 116 F.2d 801 (1940), the statutory concept was stated as embracing the "force" used in taking property from the "immediate actual possession" of another, regarded as "an area within which the victim could reasonably be expected to exercise some physical control over his property."

The indictment could validly have been limited to an allegation of a taking "by force or violence" on the date and from the person in question. Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932). Detailed specification of how such taking was made was available for discovery by defendant on

appropriate motion. The language in the indictment, that the taking was against resistance, was a specification of a way of committing the offense. Turner v. United States, supra.[1] It was surplusage, and its proof was not required. United States v. Noveck, 271 U.S. 201, 203, 46 S.Ct. 476, 70 L.Ed. 904 (1926); Tomlinson v. United States, 68 App.D.C. 106, 108, 93 F.2d 652, 654, 114 A.L.R. 1315 (1937), cert. denied sub nom. Pratt v. United States, 303 U.S. 642, 58 S.Ct. 645, 82 L.Ed. 1107 (1938). The federal courts have scrapped the old rule condemning every variance between indictment and proof, and convictions are not now set aside except for variance resulting in substantial prejudice to defendant. Berger v. United States, 295 U.S. 78, 81, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); United States v. Krepper, 159 F.2d 958, 959, 971 (3d Cir. 1946) cert. denied, 330 U.S. 824, 67 S.Ct. 865, 91 L. Ed. 1275 (1947); Rule 52(a) Fed.R. Crim.P.

We have carefully considered Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), and are convinced that it does not require a contrary result. The indictment under the Hobbs Act charged Stirone with extortion affecting interstate commerce through wrongful use of a threatened labor dispute, directed against one Rider, to interfere with shipments of sand to his Pennsylvania concrete plant. At the trial, over defense objection, the judge admitted evidence concerning, and instructed the jury that guilt could be rested on, interference with interstate commerce in regard to possible future shipments of steel to points outside of Pennsylvania from a steel mill being constructed with concrete from Rider's plant. "We cannot know," wrote Justice Black, "whether the grand jury would have included in its indictment a charge that commerce in steel from a nonexistent steel mill had been interfered with." Defendant effectively had ben deprived of his right "to have the grand jury make the charge on its own judgment." 361 U.S. at 219, 80 S.Ct. at 274.

In Stirone the prosecution was relying at trial on a complex of facts distinctly different from that which the grand jury set forth in the indictment. A court may readily perceive a plausible possibility of prejudice in the contention that a federal grand jury willing to indict an extortioner for his interference with an existing stream of interstate commerce might very well have been unwilling to bring him to the dock for a situation, however grievous, which had no federal implication except in terms of a potential interference with a future line of interstate commerce. In the case before us, there is a single set of facts, the obtaining of property of the complaining witness on the date in question by force and violence. Without deciding whether Stirone would govern if timely objection had been made, as in Stirone, we think it appropriate to observe that the variance is less substantial in factual degree than the one involved in Stirone.

---

1. We need not here consider to what extent specification in an indictment is to be equated with specification in a bill of particulars, whose very purpose is to elucidate the indictment. Defendant must object at the trial to variance from a bill of particulars, and such a bill is provided in the first instance only when requested by defendant or the court.

   Moreover, even in case of variance from particulars furnished by the Government on a bill, the pertinent doctrine requires showing of prejudice as grounds of reversal. See United States v. Haskins, 345 F.2d 111 (6th Cir. 1965) where the court, in affirming a conviction, stated (p. 114):

   > It is well settled that a variance between the proof and the bill of particulars is not grounds for reversal unless the defendant was prejudiced by the variance. (Citing cases and Rule 52(a), Fed.R.Crim.P.) * * * [Defendant] has failed to show how these variances prejudiced him at the trial. His argument ends with the assertion that there was a variance. There is no allegation of surprise and, as illustrated by a reading of the transcript of the testimony, no surprise resulted from the variance.

■ If *Stirone* is pushed to extremes, it would reinstate the old rule making every variance fatal. *Stirone* is to be read in harmony with *Berger,* which was cited and not repudiated in *Stirone.* If there is timely objection a variance may be fatal even though defendant cannot affirmatively demonstrate actual prejudice. But even with timely objection a variance that does not add a new set of facts will not be fatal without a showing of reasonable possibility of prejudice. Epps v. United States, 81 U.S. App.D.C. 244, 157 F.2d 11 (1946).[2] In every case of variance it can be argued that the grand jury that returned the indictment as is might not have been willing to return the indictment with the variance. This possibility can never be conclusively eliminated as a matter of abstract logic. Whether there is a reasonable possibility of prejudice, however, should be determined with some reference to the real world of juries and grand juries, and the realm of common sense which must guide the administration of the criminal law and rules of criminal procedure. Compare United States v. Alford, 274 U.S. 264, 267, 47 S.Ct. 597, 71 L.Ed. 1040 (1927).

■ It is decisive that in the case at bar, unlike *Stirone,* there was no objection to the introduction of the "variant" evidence.[3] Nor is there any showing or claim of actual prejudice. In fact, the record virtually negatives prejudice since the defense counsel himself told the jury: "Now, the crime of robbery as the Judge will instruct you must be some kind of a taking with a force or violence, whether against resistance *or by a sudden or stealthy* seizure or putting someone in fear." (Emphasis supplied.) When the anticipated instruction duly ensued it was not made the subject of objection, request, or proposed clarification.

The failure of defense counsel to object to variant proof may not be presumed to reflect mere inattentiveness or indifference to his client's interests. In many cases, as in the case at bar, a defense counsel may well conclude that there is nothing to be gained from such an objection, in view of the virtual certainty that the grand jury will reindict. Such cases differ from *Stirone,* where it was plausible that a grand jury might not reindict. The calculation of defense counsel must take into account not only

---

**2.** In *Epps,* this court ruled that under D.C. Code § 22–2264, prohibiting unlawful use of a vehicle taken from a "street, lot, field," etc., it is not a fatal variance that the proof showed that the car was parked on a lot, although the indictment alleged that it was parked on the street. The court followed *Berger,* noting that there was no suggestion that defendant was in any way embarrassed in his defense by the variance. The court also pointed out that the conviction could have been pleaded as a bar to a new prosecution, charging that the truck was taken from the lot.

We do not think that today *Stirone* would dictate a contrary result because of the possibility that the grand jury's willingness to indict for use of a car taken from a street does not establish that it would have been willing to indict for use of a car taken from a lot.

**3.** The impermissibility of a doctrine permitting *Stirone* objections to be pressed for the first time on appeal is evident from the mischievous consequences of any such doctrine. Let us suppose a new

*Stirone* case. Instead of objecting at the trial, as Stirone did, defense counsel would be free to take two bites at the apple— to press at the trial any defense negativing extortion, and if he could not secure an acquittal that way, to obtain appellate reversal founded on the variance in proof of effect on interstate commerce.

A question would arise as to whether, if a trial acquittal were obtained, the prosecutor could take the other side of the coin by obtaining a new indictment alleging the variant proof, and avoiding double jeopardy with the contention that the new indictment alleged a "different crime."

These mischiefs are entirely avoided by treating the indictment as merely adding a specification of one means of committing the crime, and requiring defendant to assert at the trial his objection of variance if the prosecution proffers a different means of committing the same crime. In a *Stirone*-type case the objection would be upheld. Another case might call for a further inquiry into possible prejudice. But in every case objection at trial would be requisite.

the lack of benefit, but also the positive disadvantages of raising an objection that in all likelihood will only delay and not avoid the trial. In this case appellant, being unable to furnish bail, was in jail, and he would predictably continue to be confined in jail awaiting the new indictment and the new trial date. If acquitted, he would have spent unnecessary time in confinement. Even an accused who is free on bail may opt for trial now rather than later, whether because of the availability of witnesses or other tactical reasons, or because of the natural desire to resolve the overhanging charge as promptly as possible.

The central point is that defense counsel may realistically and soundly consider a variance as an essentially technical objection, with the defendant having nothing to gain and something to lose by pressing the point.

A defendant who does press an objection on the ground of variance merits respectful consideration, unless there is no reasonable possibility of prejudice. But here no objection was taken at the trial. In view of considerations outlined above we do not believe the case warrants invoking the plain error rule.

### III

Appellant objects to statements, set forth in the margin, made during the prosecutor's closing argument.[4] The rules permit advocacy by the prosecutor but not testimony. His reference to the "reputable officers" and "very sweet" complaining witness who testified for the Government do not exceed advocacy. We are more concerned with his statement that the Government was "exceptionally proud" of its witnesses in this case, witnesses described as more impressive than witnesses in many other criminal cases. That smacks of reference to matters outside the record, and may warrant consideration notwithstanding failure of defense counsel to object at the trial.

Reversal is not appropriate, however, even assuming that the prosecutor's comments were objectionable. The testimony of the victim was convincingly substantiated by the fact that her critical identification of the distinctive nature of the items taken from her pocketbook had been given to the police before the capture of the defendant with these items in his possession. Her statement to the police was made available to defense counsel under the Jencks Act. He did not discredit her on cross-examination. The other key witness for the Government likewise gave convincing testimony. It is hard to suppose that the credit given to their testimony was attributable in significant measure to the reference made by the prosecutor in his summation. In the circumstances. we do not find prejudicial error.

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (dissenting):

Under 22 D.C.Code § 2901 (1961), robbery may be perpetrated "by force or violence" or "by putting in fear." At common law the force or violence had to be "against resistance," but the crime has been expanded under the District of Columbia Code to include "sudden or stealthy seizure or snatching." The Government's proof in this case was of a robbery by "sudden or stealthy seizure or snatching,"[1] and the trial judge in-

---

4. " * * * The defendant is charged with robbery in the form of pickpocketing, and in support of that we brought certain witnesses to you, and we are very proud of our witnesses. We bring in our witnesses in a case as we find them, ladies and gentlemen. In many types of cases we do not have the most impressive type of witness sometimes, although they may be truth-telling, but they are not as impressive as probably you may feel they should be.

Today we make no apology for any witness we have called in this case, and we are exceptionally proud of the witnesses we have called for various reasons. * * * "

1. The victim was asked: "Then it is true that you never actually saw your wallet taken?" She answered: "No, I didn't see it taken." She did not remember even seeing the defendant around her. (Tr. 31.)

structed the jury to find the defendant guilty of robbery if it found he had suddenly or stealthily seized or snatched the victim's purse.[2] The indictment charged, however, that appellant stole "by force and violence and against resistance and by putting in fear * * *." Completely omitted was the part of the statute encompassing the acts appellant was ultimately found to have committed. Under the circumstances, I respectfully submit the conviction should not stand.

It is true, of course, that under the Federal Rules of Criminal Procedure technical deficiencies in the pleadings are to be ignored. Rule 52(a), FED.R. CRIM.P. "But the substantial safeguards to those charged with serious crimes cannot be eradicated under the guise of technical departures from the rules." Smith v. United States, 360 U.S. 1, 9, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 (1959). I consider the departure from the rules in this case more than technical. Here the grand jury completely excluded from the indictment the very language of the statute on which the Government relied for conviction. Here the court, in charging the jury, inserted the excluded language and told the jury it might convict on the basis thereof. Since the Government offered no evidence except such as would support the charge contained in the excluded language, the predicate for the jury's action in convicting the defendant seems obvious.

It may be true, as the Government suggests, that the indictment would have been sufficient had it only charged a taking "by force or violence." But here the indictment set forth the specific means by which force and violence were supposedly applied: "against resistance." This committed the Government to proof of the crime of robbery "against resistance."[3] In Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the indictment charging a violation of the Hobbs Act[4] alleged extortion affecting "interstate commerce between various points in the United States and the site of his plant for the manufacture or mixing of ready mixed concrete, and more particularly, from outside the State of Pennsylvania into the State of Pennsylvania." *Id.* at 213, 80 S.Ct. at 271. Evidence was introduced tending to show an effect upon interstate commerce, not only from outside the state in, but from inside out, and the judge charged the jury that the defendant's guilt could be rested on shipments either way. The Supreme Court reversed. It "assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or

2. The judge instructed the jury that it should find the defendant guilty as charged if, among other things, it found that he took the wallet "by force and violence, or against resistance, or by putting in fear, or sudden and stealthy seizure * * *." (Tr. 296.)

3. To this extent at least, the indictment provides its own bill of particulars. And it is hornbook law that when a bill of particulars is provided, the Government is bound by it. See 4 WHARTON, CRIMINAL LAW AND PROCEDURE § 1870 (Anderson ed. 1957). See also United States v. Haskins, 6 Cir., 345 F.2d 111, 114 (1965); United States v. Neff, 3 Cir., 212 F.2d 297, 309 (1954); Land v. United States, 4 Cir., 177 F.2d 346, 348–349 (1949); Bryan v. United States, 5 Cir., 175 F.2d 223, 224 (1949), affirmed, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335, rehearing denied, 338 U.S. 957, 70 S.Ct. 491, 94 L.Ed. 590 (1950).

4. 62 STAT. 793, 18 U.S.C. § 1951:
"(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

"(b) As used in this section—
* * * * *
"(2) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

267

another had been burdened," but it held that, since interference with commerce was an essential element of the crime, "[i]t follows that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another * * *." *Id.* at 218, 80 S.Ct. at 274.[5]

The majority distinguishes *Stirone* on the ground that the prosecution there relied at trial "on a complex of facts distinctly different from that which the grand jury set forth in the indictment." The only difference in *Stirone* between the facts alleged in the indictment and the facts proved on trial was that evidence relating to an effect upon interstate exportation not alleged in the indictment was offered on trial. The trial facts as to the extortion, which was the heart of the crime, and the interstate importation were covered by the indictment. Even with this relatively small amount of variance, the Court dismissed the indictment, stating:

"* * * The grand jury which found this indictment was satisfied to charge that Stirone's conduct interfered with interstate importation of sand. But neither this nor any other court can know that the grand jury would have been willing to charge that

Stirone's conduct would interfere with interstate exportation * * *. And it cannot be said with certainty that with a new basis for conviction added, Stirone was convicted solely on the charge made in the indictment the grand jury returned. * * *" 361 U.S. at 217, 80 S.Ct. at 273.

In appellant's case, the indictment charged a taking "against resistance," whereas the proof on trial showed a totally different complex of facts involving a taking by stealth. The difference between taking "against resistance" and taking "by stealth" cannot be obscured by invoking the generic term "violence" used in the statute. The two forms of taking denounced in the statute require proof by radically distinct sets of facts. Indeed, the form ultimately proved, but not charged, here—a taking "by stealth" —only became "violent" when Congress decided to make what had been larceny at common law into robbery, punishable by a far more severe sentence.[6]

The only legal assumption that can be made from the omission of the statutory language which covers appellant's acts is that the evidence before the grand jury persuaded it that there was probable cause for charging the defendant with robbery "against resistance" or by "put-

5. Mr. Justice Black's statement in *Stirone* regarding Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), relied upon by the majority, is applicable here: "[T]he error cannot be dismissed as merely an insignificant variance between allegation and proof and thus harmless error as in Berger v. United States, 295 U.S. 78 [55 S.Ct. 629, 79 L.Ed. 1314]. The crime charged here is a felony and the Fifth Amendment requires that prosecution be begun by indictment." 361 U.S. at 215, 80 S.Ct. at 272.

6. The majority suggests that the record here "virtually negatives prejudice" because appellant's counsel, in arguing the case to the jury, stated: "Now, the crime of robbery as the Judge will instruct you, must be some kind of a taking with a force or violence, whether against resistance or by a sudden or stealthy seizure or by putting someone

in fear." (Tr. 266.) Without attempting to characterize counsel's action in so doing, it is sufficient to say that defense counsel, like the prosecutor and the court, is unable to amend the grand jury's indictment. In United States v. Norris, 281 U.S. 619, 621, 50 S.Ct. 424, 74 L. Ed. 1076 (1930), there was filed "a stipulation of facts which it was agreed should be taken to be true and of record with like effect as if set forth in the indictment." With reference to this stipulation of counsel, the Court held: "[T]he stipulation was ineffective to import an issue as to the sufficiency of the indictment, or an issue of fact upon the question of guilt or innocence. If the stipulation be regarded as adding particulars to the indictment, it must fall before the rule that nothing can be added to an indictment without the concurrence of the grand jury by which the bill was found." *Id.* at 622, 50 S.Ct. at 425.

ting in fear," but not "by sudden or stealthy seizure or snatching." [7] The only proper course for the Government, once it became aware of the disparity between charge and proof, was to resubmit the case to the grand jury. Instead, it proceeded to trial. Of course, it may well be that the defect did not become apparent to the Government until after the trial. In either event, however, this court encourages disregard of the grand jury process by refusing to insist upon the proper procedure. Reversal of this conviction and dismissal of the indictment would, of course, leave the Government free to re-indict and re-try appellant according to law. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

I respectfully dissent.

7. In reversing convictions in six different cases, the Supreme Court said:

"* * * To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him. * * *"

Russell v. United States, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962).