Daren S. WOOLEY, Appellant,

v.

UNITED STATES, Appellee.

No. 95–CF–1399.

District of Columbia Court of Appeals.

Argued Nov. 19, 1996.
Decided May 29, 1997.

Francis T. Lacey, Rockville, MD, appointed by the court, for appellant.

Maureen M. Bailey, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, and Evan M. Corcoran, Assistant United States Attorneys, were on the brief, for appellee.

Before FERREN, STEADMAN, and FARRELL, Associate Judges.

* Associate Judge FERREN's opinion is approved by Associate Judge RUIZ per her opinion in Robinson v. United States, 697 A.2d 787, also decided by the court today. As indicated in the opinion in that case by Associate Judge SCHWELB, with whom Associate Judge KING joins, as between the analysis in Judge Ferren's opinion and that in Judge Farrell's opinion, they favor the latter.

Associate Judge FERREN.*

Wooley appeals his conviction for unlawful possession with intent to distribute (PWID) a controlled substance, D.C.Code § 33–541(a)(1) (1993 Repl.), alleging primarily that he was denied his Fifth Amendment right to be tried only on charges contained in the grand jury's indictment.[1] More specifically, he claims a Fifth Amendment violation because the indictment alleged that the controlled substance in question was heroin, while the evidence at trial made clear that the drugs were in fact cocaine. We conclude that, in legal effect, the trial court constructively amended the indictment by allowing the government to proceed on the understanding that the controlled substance was cocaine. We conclude that, in legal effect, the trial court constructively amended the indictment by allowing the government to proceed on the understanding that the controlled substance was cocaine. We therefore must reverse.

I.

On June 8, 1993, Officer Efran Soto observed Coseno Street sitting on a porch in the 600 block of Division Avenue, N.E. Soto saw the appellant, Daren S. Wooley, walk up to the railing of the porch, place a hand between the railings, and receive from Street a white substance packaged in multiple plastic bags. As Wooley walked toward Officer Soto, the officer observed that Wooley was holding numerous plastic bags containing a white powdered substance. Soto then apprehended Wooley, recovering multiple ziplock bags. A field test of the white powder produced a positive result for heroin. After the jury found Wooley guilty of possession with intent to distribute a controlled substance, the court applied the addict exception, sentenced Wooley to three to nine years in prison, suspended execution of the sentence

1. Wooley also contends that there was no probable cause to support his arrest and that the trial court, therefore, should have granted his motion to suppress the drugs recovered in the search incident to arrest. We reject this argument; the facts detailed below in Part I reflect the required probable cause. See, e.g., In re J.D.R., 637 A.2d 849, 850 (D.C.1994).

and imposed two years of supervised probation.

The grand jury's indictment charged that Wooley "did unlawfully, knowingly, and intentionally possess with intent to distribute a quantity of diacetylated morphine, that is, heroin, a Schedule I narcotic controlled substance." The chemical analysis, however, ultimately revealed that the substance was cocaine. Before trial, the government sought to amend the indictment by striking the reference to the specific controlled substance. Wooley objected, arguing that only the grand jury should be permitted to amend the indictment. The trial court did not formally amend the indictment but allowed the government to "proceed on the current indictment with the understanding that what is charged is cocaine, not heroin."

## II.

### A.

The Fifth Amendment guarantees the right of a criminal defendant to be tried for a "capital, or otherwise infamous crime," only "on a presentment or indictment of a grand jury." U.S. CONST. amend V. In order to afford criminal defendants the protection of this grand jury clause, the Supreme Court has said there must be an acceptable correspondence between the charge and the evidence the government uses to prove it. *See Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630–31, 79 L.Ed. 1314 (1935). "The general rule that allegations and proof must correspond is based upon the obvious requirements" that (1) the accused must be "definitely informed" of the charges so that he or she can adequately prepare a defense, and (2) the crime must be defined with sufficient precision that the accused assuredly will not risk "another prosecution for the same offense." *Id.*; *accord Johnson v. United States,* 613 A.2d 1381, 1384 (D.C.1992).

We have said that when the facts proved at trial differ materially from those alleged in the indictment—but the "elements" of the offense are not changed—there is a "vari-ance" that could lead to dismissal of the indictment. *See, e.g., (Terrence) Ingram v. United States,* 592 A.2d 992, 1006 (D.C.), *cert. denied* 502 U.S. 1017, 112 S.Ct. 667, 116 L.Ed.2d 757 (1991). A variance of proof, however, will not require reversal and dismissal unless there is prejudice. *See Berger,* 295 U.S. at 82, 55 S.Ct. at 630–31; *Johnson,* 613 A.2d at 1384–85. If it is clear from the record that the accused was not misled by the evidence presented and could not be retried for the same events, the "notice" and "double jeopardy" concerns underlying the variance between the charge and the evidence will have been satisfied. *See, e.g., Giles v. United States,* 472 A.2d 881 (D.C. 1984) (finding no prejudice where defense clearly understood predicate felony for felony murder count was armed robbery, despite erroneous reference in indictment to wrong count as detailing the predicate felony); *(Redell) Ingram v. United States,* 392 A.2d 505, 507–508 (D.C.1978) (per curiam) (finding no prejudice where arguably there was variance of proof in naming party in possession of premises for burglary charge, since Ingram clearly was not subject to second trial on same underlying facts and his defense was unaffected by this putative variance).

There is, however, a third concern for which the grand jury clause provides protection: a manipulative prosecutor (or judge) who would supplant the grand jury by altering the charge to fit the proof, and thereby would seek conviction "on the basis of facts not found by, and perhaps not even presented to, the grand jury." *Russell v. United States,* 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962); *accord Scutchings v. United States,* 509 A.2d 634, 636 (D.C.1986). When there is such alteration, tantamount to amendment of the indictment, the Supreme Court has held that reversal, accompanied by dismissal of the indictment, is automatic. *See Ex Parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887); *Johnson,* 613 A.2d at 1384 (noting that "[b]ecause an amendment infringes on the constitutional right to a grand jury indictment the Supreme Court has adopted a *per se* reversal rule").[2]

---

2. *But cf. Woodall v. United States,* 684 A.2d 1258, 1264–65 (D.C.1996), *cert. denied* —— U.S.

——, 117 S.Ct. 1278, 137 L.Ed.2d 354 (1997)

A prosecutor's amendment of the indictment—called a "constructive" amendment—takes the indictment power away from the grand jury, and thus takes the grand jury's protection away from the accused. The withdrawal of that particular constitutional right—akin to a "structural error" under *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991)—cannot be cured, since the deprivation is removal of the grand jury's judgment, *i.e.*, its screening function, altogether. There is no substitute for the defendant's right to that historic protection; "[d]eprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error." *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960).

The hard question, of course, is obvious: when does the distance between the grand jury's charge and the prosecutor's evidence become too great to say there is a mere variance of proof subject to the harmless error rule? How can we tell when the disparity has become a constructive amendment of the grand jury's work, such that we can say the grand jury did not indict for the crime proved at trial? We have tried several verbal formulations of the answer by stressing that a constructive amendment means a change in an "element" of the offense. For example, we have said:

> A constructive amendment occurs when the trial court permits the jury to consider, under the indictment, *an element of the charge that differs from the specific words of the indictment* .... An amendment, therefore, creates a substantial likelihood that [the defendant] may have been convicted of a crime different from that charged by the grand jury.

*(Terrence) Ingram*, 592 A.2d at 1005 (internal quotation marks omitted) (emphasis added). Similarly, we have noted that "[a] variance becomes a constructive amendment ... when 'facts introduced at trial *go to an essential element of the offense charged*, and the facts are different from the facts that would support the offense charged in the indict-

ment.'" · *Scutchings*, 509 A.2d at 637 (quoting *Giles*, 472 A.2d at 883) (emphasis added).

But these formulations still beg the question. When does a variance in the evidence from that reflected in the indictment amount to a change in an "element" of the indicted offense? Two Supreme Court opinions are critical here: *Stirone, supra*, and *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985).

**B.**

In *Stirone*, the Supreme Court reversed Stirone's conviction for violating the Hobbs Act, concluding that the trial court effectively had amended the indictment and thus denied the defendant his right to be tried only on charges presented by the grand jury. ·*See id.* 361 U.S. at 218–19, 80 S.Ct. at 274. To establish a violation of the Hobbs Act, the government had to prove: (1) extortion or robbery that (2) interferes with interstate commerce. *See* 18 U.S.C. § 1951 (1994); *Stirone*, 361 U.S. at 218, 80 S.Ct. at 274. The indictment alleged that Stirone's conduct had interfered with the flow of sand into the state of Pennsylvania, where the victim was using the sand to make concrete for the construction of a steel-processing plant. *See id.* at 213, 80 S.Ct. at 271. At trial, the government not only proceeded on this theory but also introduced evidence in support of a different theory not included in the indictment, namely, that Stirone's conduct had interfered with the flow of steel from the plant to destinations outside Pennsylvania. *See id.* at 214, 80 S.Ct. at 271–72. The trial court instructed the jury that it could find interference with interstate commerce if the government proved *either* theory. *See id.*

In setting aside Stirone's conviction, the Court held that "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Id.* at 215–16, 80 S.Ct. at 272. When the trial court added a possible basis for conviction—a different way in which Stirone allegedly had interfered with interstate commerce—it effectively amended the indictment, depriving Stirone of his right to

(dictum erroneously suggesting that constructive    amendment does not always require reversal).

be tried only on charges made by the grand jury itself. *See id.* at 217, 80 S.Ct. at 273.

The Court clarified the scope of *Stirone* twenty-five years later in *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985), upholding a conviction where the indictment alleged a particular fraudulent scheme and the government, at trial, proved a more limited scheme that was, nonetheless, contained within the fraud alleged in the indictment. *See id.* at 131, 105 S.Ct. at 1812–13. The Court held it was proper to strike as surplusage unnecessary allegations that were independent of the offense proved at trial. *See id.* at 136–37, 105 S.Ct. at 1815–16. "As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." *Id.* at 136, 105 S.Ct. at 1815; *accord Williams v. United States*, 641 A.2d 479, 482 (D.C.1994) (holding that allowing government to proceed on lesser included offenses narrowed indictment and, under *Miller*, did not violate grand jury right). The Court in *Miller* also rejected language in *Ex parte Bain*, 121 U.S. at 5, 7 S.Ct. at 783–84, which had suggested that the narrowing of an indictment by striking some specific allegations was a constructive amendment, even when the remaining allegations of the indictment clearly supported the offense charged. *See Miller*, 471 U.S. at 138–39, 105 S.Ct. at 1816–17.

The *Miller* Court said that *Stirone*, by contrast,

stands for a very different proposition. In *Stirone*, the offense proved at trial was *not* fully contained in the indictment, for evidence had "amended" the indictment by *broadening* the possible bases for conviction from that which appeared in the indictment.... As the *Stirone* Court said, the issue was 'whether [Stirone] was convicted of an offense *not charged in the indictment*'.... Because the conviction might have been based on the evidence of obstructed steel imports, an element of an offense not alleged in the indictment, a

unanimous Court held that the indictment had been unconstitutionally "broadened." *Miller*, 471 U.S. at 138–39, 105 S.Ct. at 1816 (citation omitted, emphasis in original). *Miller*, therefore, recognized that if the prosecution and trial court "*broaden*[ ] the possible bases for conviction," *id.* at 138, 105 S.Ct. at 1816, a defendant might be convicted on "an *element of an offense* not alleged in the indictment," *id.* at 139, 105 S.Ct. at 1816 (emphasis added), in contravention of the Constitution.

In sum, *Stirone* and *Miller* together make clear that where a trial court broadens the possible grounds for conviction by adding another factual basis to those contained within the indictment, the court constructively— and impermissibly—amends the indictment.

### C.

*Stirone*'s and *Miller*'s forbidden "broadening" of the charge—*i.e.*, the proscribed changing of an "element" of the offense—has been tested many times in court, without achieving a consistent body of case law. One notable pre-*Miller* analysis came from Judge Leventhal in *Jackson v. United States*, 123 U.S.App. D.C. 276, 359 F.2d 260, *cert. denied* 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966), where the defendant allegedly had snatched the complainant's wallet out of her handbag. The indictment for robbery "by force and violence, and against resistance," was tried, and conviction obtained, on evidence of robbery by "sudden or stealthy seizure or snatching"—a means reflected by the facts and in the robbery statute but not in the indictment. The federal court of appeals, reviewing for plain error, affirmed the conviction. The court said that either means of robbery—against resistance, as alleged in the indictment, or by stealthy snatching, as proved at trial—was a subset of the "force or violence" the statute required and the indictment recited. *Id.* at 278, 359 F.2d at 262. The court added that the grand jury simply could have limited its specification to "force and violence," rather than going further to define the means with surplus language. *Id.* at 279, 359 F.2d at 263. Finally, the court said that the variance was "less substantial in factual degree than the one involved in *Sti-*

*rone* "; *i.e.*, it did "not add a new set of facts." *Id.* at 280, 359 F.2d at 264.

Judge Leventhal elaborated: "In *Stirone*, the prosecution was relying on a complex of facts distinctly different from that which the grand jury set forth in the indictment." *id.* at 279, 359 F.2d at 263. This "distinctly different" factual basis in *Stirone*—steel coming out rather than sand going in—reflected a plausible basis, in Judge Leventhal's view, for believing that "a grand jury might not reindict," *id.* at 279, 280, 359 F.2d at 263, 264, whereas he perceived with "virtual certainty" that the grand jury would reindict the robbery in *Jackson* when contemplating the evidence of "stealthy seizure" rather than "resistance." *Id.* at 280, 359 F.2d at 264.

Judge Leventhal's distinction between *Stirone* and *Jackson* is really an arbitrary decision to put the *Jackson* facts on the "variance" side of the continuum leading to "amendment," based on what the judge believes would, or would not, have moved the grand jury to look at the case differently. *See Jackson*, 123 U.S.App. D.C. at 279–80, 359 F.2d at 263–64. This would appear to be an intuitive judgment, for conceptually there is little, if any, difference between *Stirone*'s respective "sand" and "gravel" impacts on interstate commerce and *Jackson*'s "stealthy snatching" and "resistance" bases for finding a robbery by force and violence. Each is a different means of accomplishing the indicted crime; "stealth" broadened the means of accomplishing the robbery (limited to "resistance" in the indictment) just as "steel" broadened the means of discerning an impact on commerce (limited to "sand" in the indictment).

The problem is made particularly difficult, therefore, because the line between variance and amendment will fall, imprecisely, somewhere along a continuum from congruence between indictment and proof, to greater and greater disparity between indictment and proof. To characterize the tipping point, courts have said—still imprecisely—that the line will fall at the point one can say an "element" has been changed (or distorted enough to be deemed changed). *See Miller*, 471 U.S. at 139, 105 S.Ct. at 1816–17; *(Terrence) Ingram*, 592 A.2d at 1005; *Scutchings*, 509 A.2d at 637 (citation omitted). In effect, therefore, the court makes a judgment call based on a perception that the change of proof has signaled a different indictment, meaning an indictment reflecting facts, comprising a crime, which the court cannot be sure the grand jury has seen and indicted.

The issue, therefore—variance or amendment—is not resolved by the judge's intuitive sense of whether the grand jury would or would not have indicted on the facts as proved, but by the judge's determination of whether the grand jury *actually learned of the fundamental facts proved* so that the judge can say the grand jury truly indicted on the basis of them. Here, then, is the central difference between *Jackson* and *Stirone*: in *Jackson*—according to Judge Leventhal's reading of the record, which we have no reason to question—the grand jury learned of the same set of fundamental facts that was presented to the petit jury, namely, the snatching of a wallet out of a handbag, whereas in *Stirone* the grand jury learned only about the sand, not also about the steel for which the petit jury had been allowed to convict. Thus, in *Jackson*, the grand jury indicted for the very behavior (a "single set of facts," *id.* at 279, 359 F.2d at 263) on which the petit jury convicted, with one body apparently characterizing the forceful, violent crime—a wallet snatching—by reference to the victim's "resistance," the other characterizing the matter by reference to the perpetrator's "stealthy snatching" behavior. This "single set of facts" before both juries, therefore, provided an objective reason that Judge Leventhal could have used to conclude the grand jury would have indicted for robbery by "sudden or stealthy seizure," as well as for robbery "against resistance." In *Stirone*, however, the petit jury may have convicted for behavior ("a new set of facts," *id.* at 280, 359 F.2d at 264)—hauling steel away—that the grand jury apparently had never been told about.[3]

---

**3.** If, on the other hand, the grand jury in *Stirone* had learned of both sand and steel and still indicted only with respect to sand, the government could not obtain a conviction by citing steel, which plainly the grand jury had decided not to include. Similarly, if a grand jury was

Seen from this perspective, the question whether an "element" of the indictment has been changed at trial is to be answered not merely by reference to abstract terms—in this case, "possession of a controlled substance," in a "usable amount," "knowingly and intentionally," with "specific intent to distribute"[4]—but also by reference to the facts, *as the grand jury saw them,* that gave each term content. Accordingly, a change in characterizing the element from its expression in the indictment to its presentation at trial will be an amendment, not a mere variance, when the court cannot be sure from the indictment that the grand jury received facts—material to conviction on an element of the crime—which the petit jury received and could use to convict. *See Johnson,* 613 A.2d at 1387 (finding constructive amendment where "indictment specified a particular means of forgery—a falsely made signature—while the evidence and jury instructions addressed a different means of culpability—writing any part of the checks without the true signator's authority"); *Scutchings,* 509 A.2d at 638–39 (finding constructive amendment of indictment for obstruction of justice because indictment identified one person, whom defendant allegedly threatened, as the complainant, whereas at trial government proved obstruction with another witness whom defendant allegedly bribed).

### D.

Interestingly, in *United States v. Knuckles,* 581 F.2d 305, 311–12 (2d Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978), the court relied on *Jackson* to sustain a conviction when, in one of its counts, the indictment—as in this case—charged distribution of heroin and the prosecution proved distribution of cocaine. The

court held that the "operative facts were the same whether the controlled substance was heroin or cocaine," in contrast with the "distinctly different" set of facts withheld from the indictment, but presented to the petit jury, in *Stirone. Knuckles,* 581 F.2d at 312.

One must question the *Knuckles* court's reliance on *Jackson* rather than on *Stirone.* Not all controlled substances are fungible; they have different properties, cause different reactions and dangers, appear in different statutory "schedules,"[5] and are subject to different penalties by reference not only to the amounts involved but also to the varying natures of the substances. Of relevance to this case, for example, the mandatory minimum sentence for possession of less than 500 grams of cocaine at the time of appellant's trial was more severe than that for possession of a similar amount of heroin. *Compare* D.C.Code § 33–541(c)(1)(A–1) (1993 Repl.) (mandatory minimum four year sentence for heroin) *with* D.C.Code § 33–541(c)(1)(A–3) (1993 Repl.) (mandatory minimum five year sentence for cocaine). *See generally Holiday v. United States,* 683 A.2d 61 (D.C.1996), *cert. denied sub nom. Palmer v. United States,* — U.S. —, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997).[6]

Whether or not a charge of possession with intent to distribute cocaine can be said to concern a "complex of facts distinctly different from" a similar charge directed at heroin, the PWID heroin charged in the indictment here is not like the "single set of facts" in *Jackson*—"the obtaining of property ... by force and violence," *id.* at 279, 359 F.2d at 263—where the court concluded that "stealth" and "resistance" reflected immaterial distinctions as to how the indicted "force and violence" were carried out (one person's "stealth" is another person's "resistance").[7]

---

presented with evidence of one incident comprised of two discrete heroin and cocaine transactions, and indicted only for heroin, the government could not obtain a conviction for cocaine.

**4.** Criminal Jury Instructions For the District of Columbia No. 4.29 (4th ed.1993).

**5.** *See* D.C.Code §§ 33–514 to –522 (1993 Repl.) (identifying controlled substances enumerated by schedule, from I to V, and by corresponding tests describing dangers from abuse).

**6.** In contrast, the *Knuckles* court noted that under applicable federal law the sentences imposed, respectively, for the heroin and cocaine offenses involved did not differ. *See id.,* 581 F.2d at 311.

**7.** *See also Meredith v. United States,* 343 A.2d 317 (D.C.1975) (per curiam). The indictment charged Meredith with committing a robbery " 'while armed with a dangerous weapon, that is, a pistol.' " *Id.* at 319. The evidence at trial proved that Meredith actually possessed a starter

Heroin and cocaine are controlled substances which the legislature has identified by different "schedules," tests, and characterizations of abuse, see *supra* note 5, and then distinguished for purposes of punishment. The fact that the grand jury indicted for controlled substance/heroin, therefore, suggests that the grand·jury was not presented with controlled substance/cocaine. Indeed, the government concedes this. It follows that the grand jury's characterization of the controlled substance element of the crime as heroin—with all its objective, statutory distinctions—does not leave room for us to say the grand jury really indicted more generally for controlled substance/whatever (including cocaine), despite having been told only about heroin.

This case, therefore, is quite different from *Jackson*, where the grand jury indicted for robbery "by force and violence, and against resistance," but the defendant was convicted—apparently on the same set of facts presented to the grand jury—of robbery based on "force and violence" by "sudden or stealthy seizure or snatching." *Id.*, 123 U.S.App. D.C. at 278, 359 F.2d at 262. In *Jackson*, therefore, the grand jury had been presented with one set of facts to which either type of forceful, violent robbery could be attributed—and for which set of facts the grand jury was willing to indict.[8] In the present case, however, the grand jury, while indicting for heroin, never heard about cocaine—a substance of notably different properties and legal consequences. Accordingly, like the steel in *Stirone*, the prosecutor's introduction

of cocaine "broaden[ed] the possible bases for conviction." *Miller*, 471 U.S. at 138, 105 S.Ct. at 1816.

Seen in this light, grand jury decisions to indict for heroin or for cocaine are categorically different from one another, in the *Stirone* sense. To hold otherwise would mean that the prosecutor and the court could abandon a specifically described charge (heroin)—which the grand jury had an objective basis for selecting by reference to evidence of a controlled substance having a discrete, significant legislative classification—and replace it with another specifically described charge (cocaine) for which the grand jury, without doubt, had never seen evidence. Perhaps the grand jury would have indicted for cocaine if told that the "heroin" for which it had indicted had been a mistaken description. But a criminal defendant is entitled to be tried for what the grand jury said on the basis of what it was told, not tried for what the grand jury might have done if it had been told something else

## E.

The foregoing analysis compels us to conclude that the prosecutor's shift from heroin to cocaine in this case resulted in a constructive amendment of the indictment, under *Stirone*, by modifying the controlled substance element beyond what the grand jury can be said assuredly to have contemplated. *See Johnson*, 613 A.2d at 1387; *Scutchings*, 509 A.2d at 638–39.[9] Controlling case law holds

---

pistol, and the trial court instructed the jury that it could find Meredith guilty if he had been "armed with 'any pistol or firearm or imitation thereof.'" *Id.* We affirmed citing *Jackson*, rejecting appellant's reliance on *Stirone*. Because the starter pistol was a "pistol" of sorts and came within the statutory definition of dangerous weapon, *see id.* at 320, the language of the indictment was essentially satisfied.

8. Alternatively, a *Miller* analysis could be applied to *Jackson*, because the indictment's operative words were "force and violence, and against resistance." *Miller*, 471 U.S. at 136, 105 S.Ct. at 1815. The indictment's use of the conjunctive suggests that the additional allegation of "against resistance" could be struck, since it did not limit the previous specification of the offense ("force and violence") but appeared to allege an addi-

tional theory under which the statute was violated.

9. The government relies primarily on our decision in *Carter v. United States*, 591 A.2d 233 (D.C.1991) (per curiam), where we said that the distribution statute "merely requires that the offender know he [or she] is distributing a controlled substance," and thus rejected Carter's argument that, because he believed the substance was cocaine, he could not be convicted of knowingly distributing heroin. *Id.* at 234. The government draws from *Carter* the proposition—for all purposes—that even though the identity of the controlled substance is specified in the indictment, it can be stricken as an "unnecessary allegation." As elaborated above, however, we reject this reasoning as oversimplified in light of *Stirone* and related case law.

that a variance becomes a constructive amendment when the "facts introduced at trial go to an essential element of the offense charged"; " 'the facts are different from the facts that would support the offense charged in the indictment,' " *Scutchings,* 509 A.2d at 637 (citation omitted); and "there is a 'substantial likelihood that [the defendant] may have been convicted of a crime different from that charged by the grand jury.' " *(Terrence) Ingram,* 592 A.2d at 1005 (citation omitted). Such a constructive amendment occurred here.[10]

\*     \*     \*     \*     \*     \*

Wooley's conviction is reversed. The case is remanded for dismissal of the indictment without prejudice to reindictment for possession with intent to distribute cocaine.

*So ordered.*

FARRELL, Associate Judge, with whom STEADMAN, Associate Judge, joins, concurring in the judgment.

The number of pages of judicial rumination generated by this case (and by the companion case of *Robinson v. United States,* 697 A.2d 787, also decided this date) far exceeds the practical importance of the issue it presents. While the conceptual problem of "constructive amendment" of an indictment versus mere "variance" bedevils the court here as before, the government could have easily overcome the mishap that occurred (an indictment resting upon a subsequently corrected drug analysis) by passing the case through another grand jury with almost no need for repeating live testimony. Nonetheless, the legal issue is before us for resolution.

■  After *United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985), the test for constructive amendment of an indictment (rather than variance, which is subject to harmless error analysis) is whether there has been a *"broadening* [of] the possible bases for conviction" as distinct from removal of "allegations that are unnecessary to an offense that is clearly contained within [the indictment]." *Id.* at 138, 144, 105 S.Ct. at 1816, 1819 (emphasis in original). As Judge Ferren's lead opinion points out, this test has not led to anything like "a consistent body of case law," *ante* at 781, largely because of uncertainty about what the term "offense" means in this context (unlike, for example, the context of multiple punishment, *see Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).

There appear to be two sub-types of constructive amendment cases. One has found a constructive amendment where the jury convicted the defendant of a *factually* different offense from that presented to the grand jury. *Johnson v. United States,* 613 A.2d 1381, 1387 (D.C.1992); *Scutchings v. United States,* 509 A.2d 634, 638–39 (D.C.1986). *See Stirone v. United States,* 361 U.S. 212, 215–17, 80 S.Ct. 270, 272–73, 4 L.Ed.2d 252 (1960). In the other type, constructive amendment analysis has been applied to an allegation that the jury convicted the defendant of a different offense *legally understood* from that presented to the grand jury. *Hayward v. United States,* 612 A.2d 224, 226–27 (D.C.1992); *Meredith v. United States,* 343 A.2d 317, 319–20 (D.C.1975) (per curiam); *Jackson v. United States,* 123 U.S.App. D.C. 276, 278–80, 359 F.2d 260, 262–64, *cert. denied,* 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d

10. Judge FARRELL's distinction between a "factually different offense" and a "different crime legally understood" is useful in showing why, when a particular controlled substance is named in the indictment, its "legal" difference from another controlled substance should be seen as a *difference that mattered to the grand jury.* The factual-legal distinction, however, while helpful in the analysis, is not a bright line difference. It is because cocaine has properties that make it factually different from heroin in a very material way that the legislature has seen fit to make PWID cocaine a legally different crime. In this case, therefore, a factual difference between sub-

stances causes the legal difference between crimes. For this factual-legal reason, therefore, indictments for heroin and cocaine, respectively, are as different as indictments for sand and steel, even though videotapes of the respective PWID heroin and cocaine crimes might look the same, whereas sand and steel crimes would be visibly different operations. Ultimately, the legal distinctions between the two controlled substances are especially important here, and bear emphasis, because they symbolize and highlight the factual differences in the substances that otherwise might not be visible enough to reflect a broadening of the indictment under *Stirone.*

104 (1966). A simple example may illustrate the distinction. A defendant, D, enters a home and robs a victim, X, in 1996. D is indicted for robbery. If D is convicted on proof that he robbed Y on the street in 1995, he has been convicted of the same crime legally understood, *i.e.,* robbery, but of a different offense factually from the one charged. By contrast, if D is convicted of burglary on proof that he entered the home of X in 1996 with the requisite intent to commit a felony, he has been convicted of a different crime legally conceived, but for the same factual event. In either case a constructive amendment has occurred.

On whether a defendant has been convicted of a different *factual* offense, Judge Leventhal's analysis in *Jackson, supra,* is helpful in explaining when proof at trial of facts different from those specified in the indictment amounts to the prohibited broadening.[1] The polestar there, of course, is the Supreme Court's decision in *Stirone, supra.* In that case, as Judge Leventhal pointed out, "the prosecution was relying at trial on a complex of facts distinctly different from that which the grand jury set forth in the indictment," rather than "a single set of facts" common to both. *Jackson,* 123 U.S.App. D.C. at 279, 359 F.2d at 263. *See also United States v. Knuckles,* 581 F.2d 305, 312 (2d Cir.) (accepting *Jackson* 's understanding of *Stirone* ), *cert. denied,* 439 U.S. 986, 99 S.Ct. 581, 58

L.Ed.2d 659 (1978). Applying the *Jackson* test, we could not find a constructive amendment here. The single set of facts alleged and proven was possession of a controlled substance by a named defendant with intent to distribute it on a specific date in the District of Columbia. That bears no resemblance to the very different factual theories the jury was allowed to pick between in *Stirone.*[2] *See also Scutchings,* 509 A.2d at 638–39 (whereas indictment charged obstructing justice by threatening Michael Dobbins, trial proof showed that defendant had attempted to bribe Patricia Dobbins, hence "no single set of facts was relied on" within meaning of *Jackson* ).

But that does not end the analysis here. For in determining whether a defendant has been convicted of a different crime legally understood, a court must also consider whether the crime charged in the indictment differs in a legally significant way from the crime of conviction. The focus here is on the structure of the statute defining the crime and the legal consequences the legislature has attached to different acts.

■ When a grand jury indicting for possession or distribution specifies one form of controlled substance rather than another, that specification has distinct legal significance, both conceptually and often practically.[3] Controlled substances are classified by

1. Except for the fact that, strictly speaking, *Jackson* was a plain error case (the issue of constructive amendment was not raised at trial), *Jackson* would bind this court in its context of asserted factually different offenses. *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

2. As the court stated in *Jackson,* "A court may readily perceive a plausible possibility of prejudice in the contention that a federal grand jury willing to indict an extortioner for his interference with an existing stream of interstate commerce might very well have been unwilling to bring him to the dock for a situation, however grievous, which had no federal implication except in terms of a potential interference with a future line of interstate commerce." *Jackson,* 123 U.S.App. D.C. at 279, 359 F.2d at 263 (distinguishing *Stirone* ). Thus, the court in *Jackson* correctly placed the emphasis under *Stirone* on whether a distinct constellation of *facts* separated the crime charged from the crime proven. Viewed that way, the variance in *Jackson*—like the variance in *Meredith v. United States, supra*—

quite properly was determined not to be a constructive amendment.

On the other hand, *Jackson* 's speculation as to whether the grand jury would have indicted in differing circumstances probably has not survived *Miller* 's objective approach to the issue. In determining whether a "different complex of facts" is involved, the focus should be upon what the grand jury stated in the indictment in contrast to the facts proven at trial. Likewise, in determining whether the defendant has been convicted of a different crime legally from that for which he was indicted, the focus should be on the statutory elements of the offense and the legal consequences the legislature has attached to different acts.

3. The analytical problem in this case arises because the indictment " 'descend[ed] to particulars,' " *Russell v. United States,* 369 U.S. 749, 765, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962) (citation omitted), and specified a particular factual way in which the crime had been commit-

Schedule (I through V) based upon judgments the Executive Branch has made as to their relevant potential for abuse and physical or psychological dependence, and their accepted medical use (if any) in treatment. *See, e.g.,* D.C.Code §§ 33–513, –515 (1993). So when a grand jury charges, as in this case, possession of "heroin, a Schedule I narcotic controlled substance," it is saying something very different about the seriousness of the behavior than if it had charged possession of, say, a Schedule III or V controlled substance, the latter each having (among other things) "a low potential for abuse relative to" substances in higher schedules. *See* D.C.Code §§ 33–519(1), –521(1). While heroin is a Schedule I controlled substance, cocaine is listed in Schedule II.

Reinforcing that distinction is the statutory gradation in punishment according to schedule and type of controlled substance. A charge of distribution of heroin is measured very differently in terms of punishment than is distribution of a Schedule V or even III controlled substance. PWID cocaine at the time of appellant's trial subjected a defendant to a potentially longer prison sentence than PWID of an equal amount of heroin. *Compare* D.C.Code § 33–541(c)(1)(A–1) (mandatory minimum four year sentence for heroin), *with* D.C.Code § 33–541(c)(1)(A–3) (mandatory minimum five year sentence for cocaine). *See also Holiday v. United States,* 683 A.2d 61 (D.C.1996), *cert. denied,* ── U.S. ──, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997). Even if, as we may assume, a grand jury is told nothing about the differing penalties for distributing one controlled substance rather than another, a specification in the indictment of the substance possessed is still a definitional statement about the offense that has legal significance. *See,* by contrast, *Knuckles,* 581 F.2d at 311 (court able to say under federal CSA that the variance between heroin and cocaine "affect[ed] neither the Government's case nor the sentence imposed").

ted, even if the grand jury could have charged in more general terms. It is unnecessary to decide here whether, in light of our decision in *Carter v. United States,* 591 A.2d 233 (D.C.1991), the indictment could properly have charged possession

Moreover, our prior holdings have established that the possession of a mixture of two controlled substances constitutes two distinct criminal offenses. *Arrington v. United States,* 585 A.2d 1342, 1344 n. 4 (D.C.1991); *Corbin v. United States,* 481 A.2d 1301, 1302 (D.C.1984). *See also Minor v. United States,* 647 A.2d 770, 773 (D.C.1994) (noting that possession of mixture of cocaine and heroin resulted in two charges), *cert. denied,* ── U.S. ──, 116 S.Ct. 347, 133 L.Ed.2d 244 (1995). In other words, the legislature provided for separate convictions and sentences for what otherwise might be conceived of as the unitary criminal offense of possessing a "controlled substance."

In these circumstances, it follows that the constitutional screening function which the grand jury performs gives a defendant the right to be tried on the crime specifically charged, including the controlled substance identified and not a drug whose possession carries different legal significance and potentially different punishment. The grand jury's own factual designation of the offense prevents conviction on a factual base broadened to include some other drug.

with intent to distribute a controlled substance, rather than specifying heroin or any other substance. *See also Knuckles,* 581 F.2d at 311 ("Whether the substance was cocaine or heroin makes no difference under 21 U.S.C. § 841").