**William E. PACE, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 94–CF–1664.

District of Columbia Court of Appeals.

Argued April 15, 1996.
Decided Jan. 15, 1998.

---

Betty M. Ballester, appointed by the court, for appellant.

June M. Jeffries, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Thomas C. Black, and Julieanne Himelstein, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN and RUIZ, Associate Judges, and MACK, Senior Judge.

STEADMAN, Associate Judge:

Appellant was charged by indictment with a number of counts related to the sexual abuse of three children. After the counts relating to two of the children were dismissed, appellant was convicted on three remaining counts: enticing a minor child, D.C.Code § 22–3501(b) (1989), taking indecent liberties with a minor child, D.C.Code § 22–3501(a) (1989), and sodomy with a minor, D.C.Code § 22–3502 (1989),[1] each relating to J.R., the remaining child. The indictment charged appellant with committing these offenses against J.R. "[b]etween on or about April 1, 1994 and on or about April 30, 1994."

Appellant challenges his convictions on the ground that the government's evidence regarding the time of the offenses so varied from the time period specified in the indictment that it amounted to a constructive amendment of, or at least an impermissible variance from, the indictment.[2] We hold that the indictment was not constructively amended, and, although a variance may have occurred, no prejudice resulted. Accordingly, we affirm.[3]

## I.

J.R. lived in an apartment with her mother and appellant, who was her mother's boyfriend, at all relevant times. J.R., who was nine years old at the time of trial in September 1994, specifically stated at five different points in her testimony that she had been assaulted by appellant on only one occasion. Nevertheless, the trial court found that "a jury could listen to the bottom line of [J.R.'s] testimony and think that despite the inconsistency, she was clearly describing two distinct incidents." J.R. described an incident in which appellant told her to go into her mother's bedroom, and then committed anal sex and oral sodomy on her while she lay on the floor of her mother's bedroom. J.R. also described an incident in which appellant committed anal sex on her while she lay on the bed in her own bedroom.[4] The trial court instructed the jury that appellant was charged with offenses against J.R. only with regard to the incident that J.R. described as having occurred in her mother's room,[5] and that, if the jury found that the evidence showed any other incidents, any such evidence was to be considered only "for the purpose of deciding whether it would show some sort of unusual sexual preference by the defendant towards the complainant."

With regard to the timing of the offenses, J.R. testified that appellant sexually assaulted her after Christmas, "on school days," before summertime. A police officer involved in the case testified that appellant moved out of the apartment where J.R. lived on June 15, 1994, and that J.R. had stated that appellant first sexually abused her be-

1. The statutory provisions under which appellant was convicted were repealed as of May 23, 1995, after the offenses at issue were committed, and after appellant was convicted. See D.C. Law 10–385, § 501(b), 42 D.C.Reg. 53, 62 (1995). For the corresponding provisions currently in force, see D.C.Code §§ 22–4108 to –4112 (1996).

2. Appellant made this argument to the trial court in a motion for judgment of acquittal and a motion to set aside the verdict. The trial court deferred its ruling on the issue during trial. After trial, the court denied the motion to set aside the verdict, finding that, to the extent that a variance occurred, appellant had not been prejudiced by it.

3. Appellant also challenges the sufficiency of the evidence presented against him, asserting that the complainant's testimony was unreliable and impermissibly vague. Although not overwhelmed by the proof, we cannot say that the jury acted unreasonably in crediting it. See Bar-

rera v. United States, 599 A.2d 1119, 1124–25 (D.C.1991).

4. We see no reason to second-guess the trial court's finding that the jury could have interpreted this testimony as describing two incidents. The trial judge heard the testimony and observed the witness. Moreover, after J.R. described the incident in her own room, the prosecutor asked her, "Was this a different time than you just told us about?" and J.R. answered "Yes." In addition, a police officer involved in the case testified that J.R. told him that appellant had sexually abused her "a lot of times" and in both bedrooms.

5. In closing argument, the prosecutor advised the jury that the government was proceeding on the theory that the anal sex in the mother's room constituted the offense of taking indecent liberties with a minor child, while the oral sodomy in the mother's room constituted the offense of sodomy with a minor.

fore Christmas 1993 and continued to do so until the time of a cousin's visit, which was at the end of May 1994. In addition, a doctor who examined J.R. in June 1994 testified that J.R.'s mother had indicated to her that J.R. had alleged a sexual assault in December of 1993 and again in April 1994.[6] The indictment charged that the offenses occurred "[b]etween on or about April 1, 1994 and on or about April 30, 1994." The government's proof in general established only that the offenses occurred sometime during a five-month period between late December 1993 and late May 1994, although given the testimony of the doctor and the police officer, as well as the child herself, the incident could have occurred in the time frame of the indictment.

## II.

### A.

◼ A deviation between the charges in the indictment and the proof at trial can constitute a variance from, or an amendment (literal or constructive) of, the indictment. *(Terrence) Ingram v. United States*, 592 A.2d 992, 1005–06 (D.C.1991). We recently addressed the doctrines of constructive amendment and variance in the companion cases of *Wooley v. United States*, 697 A.2d 777 (D.C. 1997) and *Robinson v. United States*, 697 A.2d 787 (D.C.1997). While an amendment warrants reversal of a conviction, a variance between the indictment and the proof not amounting to a constructive amendment does not warrant reversal unless the appellant shows prejudice. *Wooley, supra*, 697 A.2d at 785 (Farrell, J., concurring); *(Terrence) Ingram, supra*, 592 A.2d at 1005–06.

◼ Appellant contends in substance that a constructive amendment occurred in this case. There are "two sub-types of constructive amendment cases." *Wooley, supra*, 697 A.2d at 785 (Farrell, J., concurring). "One has found a constructive amendment where the jury convicted the defendant of a

*factually* different offense from that presented to the grand jury. In the other type, constructive amendment analysis has been applied to an allegation that the jury convicted the defendant of a different offense *legally understood* from that presented to the grand jury." *Id.* (citations omitted). In the case where different facts are alleged to have been presented to the grand jury, the test for constructive amendment is whether " 'the prosecution was relying at trial on a complex of facts distinctly different from that which the grand jury set forth in the indictment,' rather than 'a single set of facts' common to both." *Id.* at 786 (quoting *Jackson v. United States*, 123 U.S.App.D.C. 276, 279, 359 F.2d 260, 263 (1966)). In the case where a different offense, legally understood, is alleged to have been presented to the grand jury, the test for constructive amendment is whether "the structure of the statute defining the crime and the legal consequences the legislature has attached to different acts" indicate that the "crime charged in the indictment differs in a legally significant way from the crime of conviction." *Id.*

Here appellant does not contend that he was convicted of a different offense legally understood, but that he was convicted of a factually different offense from that presented to the grand jury. Thus, we must determine whether the prosecution was relying on a distinctly different complex of facts at trial from those set forth in the indictment. The indictment in this case charged that appellant, between on or about April 1, 1994, and on or about April 30, 1994, enticed J.R., took indecent liberties with J.R., and committed sodomy with J.R. This was the precise conduct of which appellant was convicted. Although there was evidence that appellant may have sexually assaulted J.R. in two separate incidents—once in J.R.'s room and once in the mother's room—the jury was instructed that the only incident for which appellant could be convicted was the one in the mother's room.[7] To the extent that J.R. described a second incident that occurred in

---

6. While J.R.'s mother testified that J.R. reported just one incident to her, in December 1993, such inconsistencies in the testimony are for the jury to resolve. *See Payne v. United States*, 516 A.2d 484, 495 (D.C.1986).

7. The prosecutor also made this point in closing argument.

her own room, that incident—unlike the one that J.R. described as having occurred in her mother's room after appellant told her to go there—did not involve enticement, one of the offenses charged by the grand jury.[8] In light of the trial court's instructions on the particular incident comprising the charged offenses and on the timing of the offenses charged, appellant could only have been convicted on the basis of the incident that occurred in the mother's room.

█ Furthermore, in this case, the trial court's very instructions reflected the general terms of the indictment. The trial court told the jury:

> Now, regarding each of the charges, you will note that the indictment charges that the offenses were committed on or about April 1st, 1994—were committed between on or about April 1st, 1994 and April 30th, 1994. The proof need not establish with certainty the exact date of the alleged offenses. It is sufficient that the evidence in the case establishes beyond a reasonable doubt that the offenses were committed on a date reasonably near the dates alleged.

This instruction also reflected this court's affirmation of the use of relatively imprecise descriptions in recognition of the inability of minors to identify exact times, or even places. See Pounds v. United States, 529 A.2d 791, 793 n. 2 (D.C.1987); Jackson v. United States, 503 A.2d 1225, 1226–27 (D.C. 1986). We do not understand appellant's argument of evidentiary insufficiency to take issue with satisfaction of the requirements of this particular instruction as given to the jury. See note 3 supra. Accordingly, because the prosecution did not rely on a distinctly different complex of facts at trial from those set forth in the indictment, we thus conclude that no constructive amendment occurred.

## B.

█ Appellant also argues that a variance occurred in this case. A variance occurs when "the evidence at trial proves facts materially different from those alleged in the indictment." Scutchings v. United States, 509 A.2d 634, 636 (D.C.1986) (emphasis omitted). We may assume this argument for purposes of this aspect of the appeal. However, where, as here, the variance does not amount to a constructive amendment, reversal is warranted only upon a showing of prejudice. Wooley, supra, 697 A.2d at 785 (Farrell, J., concurring); (Terrence) Ingram, supra, 592 A.2d at 1005–06. A variance may prejudice a defendant such as by (1) depriving him of adequate pretrial notice of the details of the charge against which he must defend, and/or (2) depriving him of protection against reprosecution. Barker v. United States, 373 A.2d 1215, 1218 (D.C.1977). Appellant has failed to show any prejudice, and we discern none under the circumstances of this case.

█ Appellant argues that he was deprived of the requisite notice, on the theory that he might have been able to present an alibi defense for some dates if the indictment had alleged a broader time period. However, the indictment's use of the phrase "on or about" with reference to the time period placed appellant on notice that the exact time period was not critical. (Terrence) Ingram, supra, 592 A.2d at 1007 (construing "on or about" to mean "a date reasonably close to the one alleged"). See also United States v. Cochran, 697 F.2d 600, 604–05 (5th Cir.1983) (variance of 50 days not prejudicial and thus not reversible error; "the concerns raised by a variance [i.e., notice and protection from reprosecution] inform the inquiry into reasonable limits of the on or about allegation when time is not an element of the offense"). Moreover, the government filed a written pretrial notice announcing its intention to introduce "other crimes" evidence [9]—includ-

---

8. Under former D.C.Code § 22–3501(b) (1989), see note 1 supra, enticement consisted of taking, enticing, alluring, or persuading a child "to any place whatever for the purpose either of taking ... immoral, improper, or indecent liberties with such child, with said intent or of committing ... [a] lewd, or lascivious act upon or with the body,

or any part or member thereof, of such child with said intent. ..."

9. See Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

ing evidence of acts against J.R. several times during the three years that appellant lived in the apartment—thereby placing appellant on notice that his conduct with J.R. over a broad period might be at issue at trial. In spite of this notice, appellant presented only a general denial defense;[10] he neither presented an alibi defense at trial, nor proffered any possible alibi to the trial court. Furthermore, after hearing J.R.'s testimony, appellant did not request a continuance.[11] Even on appeal, appellant does not allege that he actually had an alibi for any part of the relevant period, during which he was continuously living with J.R.[12] Therefore, while the variance here had the potential to cause prejudice by depriving appellant of the requisite notice and thus impermissibly hampering his defense, we see no possibility that any such prejudice actually occurred. We agree with the trial court that there was no "infringe[ment] on the ability of the [d]efendant to defend the charges."[13]

Accordingly, the judgment of conviction appealed from is

*Affirmed.*

MACK, Senior Judge, dissenting:

## I.

"Slippery Slope" is hardly an acceptable phrase for use in the traditionally formal parlance of legal writing. However, it is a phrase that most adequately conveys the apprehension a citizen feels (or should feel) when faced with a legal pronouncement that may represent, if even slightly, an erosion of constitutional protections. The Grand Jury Clause of the Fifth Amendment to the United States Constitution guarantees to a defendant the right to be tried only upon criminal charges returned in a grand jury indictment. Just recently this court reaffirmed the principle that convictions obtained upon proof of essential facts not scrutinized by a grand jury may constitute a constructive amendment of the indictment, which requires reversal. *Wooley v. United States,* 697 A.2d 777 (D.C.1997) (reversing a conviction for possession with intent to distribute a controlled substance, cocaine, where the indictment charged possession with intent to distribute heroin). *Cf. Robinson v. United States,* 697 A.2d 787 (D.C.1997) (reversing a conviction where the indictment charged distribution of heroin and the evidence at trial established that the substance was in fact cocaine).

The *Wooley/Robinson* division opinions read together, carry the weight of "near" en banc decisions of this court. Thus, two judges, voicing the opinion that a variance between the grand jury's charge (of heroin possession) and the evidence at trial (of cocaine possession) had not prejudiced Mr. Robinson, nevertheless agreed to reversal because a third member of the *Robinson* division agreed with the judges in the *Wooley* division that reversal was required (upon facts "not readily distinguishable").

The prohibition against "constructive amendment" of an indictment, ingrained in the Fifth Amendment (and in Rule 7(c) of the Superior Court Rules of Criminal Procedure) is not a hollow rule; it *is not* a rule "ordained" by "impregnable citadels of technicality." *See Robinson, supra,* 697 A.2d at

10. Appellant testified that he had not committed any of the charged acts at any time and, more specifically, at any of the several specified time periods. On appeal there is no claim that appellant's defense would have been any different or more comprehensive had he known of the asserted variance.

11. *See United States v. Reed,* 887 F.2d 1398, 1403 & n. 9 (11th Cir.1989) (finding no prejudice in time variance of one month and noting that defendant did not move for a continuance when he learned that the government intended to prove a date different from that in the indictment); *United States v. Somers,* 496 F.2d 723, 746 & n. 42 (3d Cir.1974) (noting that conclusion that defendant had adequate time to prepare any possible alibi defense, despite time variance of approximately one year, was "fortified by the fact that [defendant] did not request a continuance").

12. Indeed, in closing, appellant's counsel argued to the jury that "[t]he only possible way that you could be sure, positively sure [appellant] didn't do this is if [appellant] wasn't there. And we can't tell you that because [appellant] was in the house and he was there."

13. Appellant does not argue that the variance prejudiced him in the sense that he might be subject to a future prosecution for the same offenses, and we discern no such danger.

792 (Schwelb, J. quoting 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2881, at 441–42 (1995)). As Judge Ruiz ably noted in concurring in reversal, *see Robinson, supra* at 793–94:

> Under that view (i.e., that in the absence of prejudice a guilty verdict should not be set aside because of a "single misstep" by the prosecution and "an inadvertent error in the indictment") the grand jury is but a quaint technicality. That kind of reasoning, though facially appealing as "common sense" with the benefit of 20/20 hindsight provided through the lenses of a petit jury's verdict, simply misses the point of the protection offered by the Fifth Amendment's Grand Jury Clause.

In the same vein, Judge Ferren, in *Wooley, supra,* 697 A.2d at 779, wrote *citing Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630–31, 79 L.Ed. 1314 (1935):

> "The general rule that allegations and proof must correspond is based upon the obvious requirements" that (1) the accused must be "definitely informed" of the charges so that he or she can adequately prepare a defense, and (2) the crime must be defined with sufficient precision that the accused assuredly will not risk "another prosecution for the same offense."

Judge Ferren voiced a third concern for which the grand jury clause provides protection, *i.e.,* that a prosecutor or judge might supplant the grand jury by altering the charge to fit the proof, and thereby would seek conviction "on the basis of facts not found by, and perhaps not even presented to, the grand jury." Citing *Russell v. United States,* 369 U.S. 749, 770, 82 S.Ct. 1038, 1050–51, 8 L.Ed.2d 240 (1962); *accord Scutchings v. United States,* 509 A.2d 634, 636 (D.C. 1986).

Despite the divergence of expressions as to what the outcome should have been in the *Wooley/Robinson* cases, the logic of the reasoning cannot be distinguished so as to support affirmance in the instant case. Measured by this divergence one might attempt to distinguish facts; measured by this logic, we are not required to engage in such a convoluted exercise. We must reverse.

## II.

It is facially apparent (as the instant case demonstrates) that a variance between the proof at trial of the *date* of the commission of the crime and the *date* of its commission as alleged by the grand jury, *may be so unreasonable* as to amount to a constructive amendment. Such a variance does not convey the definite information that would enable a defendant to prepare an adequate defense. Obviously, in hindsight, we cannot conclude (as does the majority in the instant case) that because Mr. Pace did not assert an alibi defense at trial, he has not been prejudiced; a defense may well be, as here, that "I did not do this and I may (or may not) be able to assert a provable alibi defense." [1]

Moreover, an unreasonable variance as to the time of a crime's commission reduces the role of the grand jury to a "quaint technicality;" it does not protect Mr. Pace against the risk of another "prosecution for the same offense," an issue which the majority here dismisses as not being argued (together with a summary "we discern no such danger"). Most important of all, an unreasonable variance as to time of the commission here has not protected Mr. Pace from the alternative of the charge to fit the proof *so as to obtain a conviction* on facts not found or not even presented to the grand jury.

## III.

Rule 7(c) of the Superior Court Rules of Criminal Procedure generally provides what an indictment *must* include. There, it is specified, "The indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense

---

1. In this court, the brief of the government states the position of Mr. Pace as follows:

   [A]ppellant now claims that the evidence at trial was of incidents that took place between December 1993 and June 1994, that there was no evidence presented by either party that the incidents took place "particularly within the time frame charged in the indictment" that he was not on notice as to the greater time period, and that he therefore could not present an adequate defense.

charged." The time of the commission of the offense is an essential fact. The litany that an indictment must inform the defendant of "the precise nature" of the alleged offense cannot be read as applying only to the essential elements of a crime. *See In re J.R.G.,* 305 A.2d 529, 530 (D.C.1973). Indeed, we have recognized that an amendment of an indictment "deprives the defendant of the constitutional right to be tried upon the charge subjected to the grand jury's scrutiny," and requires reversal. *Ingram v. United States,* 592 A.2d 992, 1005 (D.C.1991). Although slight variances between the words of an indictment and the proof at trial are permitted, "prejudicial variance" (amounting to the constructive amendment of the charges as rendered by the grand jury) is not permitted. *Kotteakos v. United States,* 328 U.S. 750, 757, 66 S.Ct. 1239, 1243–44, 90 L.Ed. 1557 (1946). Thus, we have held that constructive amendment of the indictment occurs where the facts asserted at trial "materially differ from the facts contained in the indictment," even where the essential elements of the offense are the same. *(Oliver) Johnson v. United States,* 613 A.2d 1381, 1384–85 (D.C.1992).

Specifically, in cases involving divergence between an indictment's date of offense and the proof, we have noted generally (in a case where there was a variance of one day) that where an indictment charges "on or about" a certain date "a defendant is on notice that a particular date is not critical" but that the evidence will conform to the indictment in such circumstances *only "if it establishes that the offense was committed on a date reasonably close to the one alleged."* *Ingram v. United States, supra,* 592 A.2d at 1002. We have never accepted a variance of time of several months between indictment allegation and proof at trial as being not critical.[2]

## IV.

Today my colleagues find that, even if there was a constructive amendment amounting to a factual difference between proof and indictment, Mr. Pace cannot prevail because he has shown no prejudice. I suggest that, again, the element of prejudice is facially apparent. Mr. Pace was convicted; he was convicted on a record of unreliable, impermissibly vague and conflicting testimony which even my colleagues find less than "overwhelm(ing)."[3]

The transcript in this case reflects the dilemma faced by an accused, an alleged victim, family members, and the trial court, when the prosecution proceeds to trial without adequate preparation. Mr. Pace was initially charged with nine counts of sexual abuse (Enticing, Indecent Liberties, and Sodomy) involving three of his paramour's children, then ages 10, 8, and 5. The government thereafter moved to dismiss the counts as to the ten-year-old and trial was scheduled on the remaining six counts. At the pretrial voir dire stage, the trial court found the five-year-old boy incompetent to testify at trial.[4] It followed thereafter that Mr. Pace was

---

2. There are cases from other jurisdictions stating that, "proof of any date before the return of the indictment and within the statute of limitations is sufficient." *United States v. Morris,* 700 F.2d 427, 429 (1st Cir.)(quoting 1 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 125, at 383 (1982)), *cert. denied,* 461 U.S. 947, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (1983); *see United States v. Auerbach,* 913 F.2d 407, 412 (7th Cir.1990); *United States v. Harrell,* 737 F.2d 971 (11th Cir. 1984), *cert. denied,* 470 U.S. 1027 (1985). That we do not follow such a rule is plain from our decisions. *See Wooley, supra.* Moreover, such a rule would create the truly bizarre local situation that a murder indictment would have to provide only that the offense occurred "sometime prior to the date of the indictment," since the offense of murder carries no statute of limitations in the District. *See* D.C.Code § 23–1113(a)(1) (1989 Repl.).

3. The trial court faced with a motion for judgment of acquittal deferred its ruling on the issue. After trial, it denied a motion to set aside the verdict.

4. On voir dire to determine competency, the five-year-old boy correctly identified the trial judge's hair as red, answered "no" when asked if it was green, but promptly thereafter indicated that on the stand he was going to tell a lie and that he wanted to leave.

The eight-year-old girl, J.R. (the subject of this appeal) fared somewhat better, although when asked if she told the truth to friends, answered, "My mother told me don't tell anybody my business."

eventually convicted only on the counts relating to J.R., the eight-year-old. As to these counts, the indictment charged the offenses as occurring "[b]etween on or about April 1, 1994 and on or about April 30, 1994."

The proof at trial (as to time of commission) was even less exacting than the indictment's unusually vague allegation. The only witness providing direct evidence of the alleged abuse [5] was J.R. who did not specify a date of "the" offense other than to say, in response to cross-examination, that it occurred during the school year (obviously a reference covering the date of September 1993 through June 1994). Moreover, she specifically and unequivocally testified at five different points that she had been assaulted by appellant only once.

The testimony by other witnesses likewise broadened the element of time. Thus, J.R.'s mother, testifying in defense of Mr. Pace, admitted that J.R. had reported an assault to her around Christmas of 1993, and that she unsuccessfully sought medical attention where she was told by an attendant that J.R. did not appear to be an abused child. J.R. had never reported an assault to her again and she did not pursue the matter further. A police detective testified who had visited the two bedroom apartment where appellant's paramour lived with five children (including two fathered by appellant). The officer (who, according to appellant, threatened to have the children removed if appellant did not move out) recalled that J.R. had told him that she was assaulted more than once between Christmas 1993 and the end of May 1994, thus not only broadening the element of time but also the number of criminal acts. A doctor who examined J.R. in June 1994, remembered J.R.'s mother as indicating that the assault may have occurred sometime between Christmas 1993 and April 1994.

It is obvious why appellant, who by all accounts was a father-figure to five children on a daily basis, would not, indeed could not, defend himself by advancing an alibi. It is also obvious that Mr. Pace was not put on notice that he would be required to defend himself against further accusations of criminal acts covering at least a five-month period of time beyond that alleged in the indictment.

Although in this jurisdiction, we have deemed date variances (covering a one to two day period)to be so minor as to avoid being labeled as constructive amendments (*see Ingram, supra; Jeffcoat v. United States,* 551 A.2d 1301 (D.C.1988)), we have not until today accepted a variance of several months between the indictment and requirement in *Ingram, supra,* 592 A.2d at 1007, that the proof at trial must be of a date "reasonably close" to the date specified in the indictment. Moreover, we have held that it is an impermissible variance—a constructive amendment of the indictment—for the government at trial to broaden an indictment to include different criminal acts. *Johnson v. United States, supra,* 613 A.2d at 1384–85.

Finally, we can all appreciate the difficulties faced by the government in these types of cases, especially when unwelcomed prosecution is pursued. Even though it might mean further trauma to particularly vulnerable people, perhaps it would be best to have the complainant testify before the Grand Jury in this matter, thereby increasing the chances that the Grand Jury would pass on the same allegations as are subsequently made at trial. In any event, I am troubled by the government's argument that the absence and vagaries of proof shows appellant's guilt and should be excused. That argument comes dangerously close to a plea for the substitution of a prosecutor's belief in guilt or innocence for that of a petit jury. Failures of proof may be endemic to these sorts of prosecution. However, the protections afforded to defendants by the Constitution apply in the same way in every criminal case and it is within the strictures of that guiding document that prosecutions must fit, not the other way around.

In this regard, I commend to the government the words of Judge Farrell (concurring in the judgment of reversal in the *Wooley* decision, *supra,* 697 A.2d at 785: "[T]he government could have easily overcome the mis-

---

5. The bulk of J.R.'s testimony was extremely vague. In my view, the assertion that she described two different events at two different

times is only supported by a selective and rather slanted reading.

hap that occurred ... by passing the case through another grand jury...." I would reverse).