**Vanessa R. AGNEW, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 97–CF–1697.**

District of Columbia Court of Appeals.

Argued Nov. 7, 2000.

Decided Dec. 31, 2002.

Corinne Beckwith, with whom James Klein and Jaclyn S. Frankfurt, Public Defender Service, were on the brief, for appellant.

Irma Valdez, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., and Eugene Rossi, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN * and RUIZ, Associate Judges, and NEBEKER, Senior Judge.

RUIZ, Associate Judge:

Vanessa Agnew appeals her conviction of unauthorized use of a vehicle (UUV), in violation of D.C.Code § 22–3815 (recodified as D.C.Code § 22–3215 (2001)), contending that the government's evidence was insufficient.[1] We hold that the evi-

---

* Judge Steadman concurs in the result.

1. Ms. Agnew was tried jointly with her codefendant, Marvin Wilson, in 1996, and she was sentenced to one to three years imprisonment.

The first appeals of Agnew and Wilson were submitted on the summary calendar for March 22, 1999. Affirming the convictions of both Agnew and Wilson, we issued an unpub-

dence was insufficient to prove beyond a reasonable doubt that use of the vehicle in question was unauthorized or that appellant knew that the vehicle was being used without the consent of the owner. Thus, we reverse appellant's conviction.

## FACTUAL SUMMARY

Appellant and her codefendant, Marvin Wilson, were charged with one count of receiving stolen property in violation of D.C.Code § 22–3832[2] and one count of UUV after the police stopped the gray Honda Accord appellant was driving in Southeast Washington on January 31, 1995. The prosecution presented six witnesses—Ms. Hautala, the owner of a 1990 Honda Accord that had been stolen in Virginia six months prior to the traffic stop involving the defendants in this case, and five police officers who were involved in the stop.

Ms. Hautala testified that her 1990 gray four-door Honda Accord was taken from her home in Centerville, Virginia, on July 11, 1994, and she never saw the car again. She had not given anyone permission to use the car and did not know appellant. Ms. Hautala was not asked to identify the car in which appellant was stopped six months later.

The five officers who testified for the government described the circumstances of their stop of the gray Honda Accord occupied by appellant and codefendant Wilson. While driving an unmarked police car near the 2500 block of Southern Ave., SE, Officer Key witnessed a gray Honda Accord with Maryland license plates traveling at an "unreasonable" speed. Officer Key made a U-turn to attempt to catch up to the car, lost sight of the car for a few seconds, and then regained sight of the Honda as it ran a stop sign at the intersection of 23rd and Savannah Streets, SE. He called for police units in the area to assist

lished Memorandum Opinion and Judgment. *See Wilson* and *Agnew v. United States*, Nos. 96–CF–1900 and 97–CF–1697 (D.C. March 24, 1999).

On March 22, 1999, Garland Pinkston, Jr., Clerk of the Court, wrote a letter to appellant's previous counsel, Mr. Ayeni, requesting an explanation of the unusual similarity between the brief Mr. Ayeni filed on appellant's behalf and codefendant's appellate brief, which was filed two months prior to the filing of appellant's brief. On June 9, 1999, after receiving a response from Mr. Ayeni denying any wrongdoing, the Court of Appeals issued an Order to Show Cause, directing Mr. Ayeni to explain why this matter should not be referred to Bar Counsel, why he should not be denied compensation for his work on appellant's appeal, and why his name should not be stricken from the list of eligible attorneys under the Criminal Justice Act. Mr. Ayeni responded on June 25, 1999. On August 18, 1999, the Court of Appeals issued an order expressing serious concerns regarding Mr. Ayeni's actions and referred the matter to Bar Counsel. The Court also appointed James Klein of the Public Defender Service to serve

as counsel for appellant. On December 7, 1999, the court issued an order granting appellant's motion to Recall the Mandate, vacating the March 24, 1999 Memorandum Opinion and Judgment, and reopening the appeal in appellant's case.

2. D.C.Code § 22–3832 states in pertinent part:

(a) A person commits the offense of receiving stolen property if that person buys, receives, possesses, or obtains control of stolen property, knowing or having reason to believe that the property was stolen, with intent to deprive another of the right to the property or a benefit of the property.
(b) It shall not be a defense to a prosecution for an attempt to commit the offense described in this section that the property was not in fact stolen, if the accused engages in conduct which would constitute the crime if the attendant circumstances were as the accused believed them to be.
D.C.Code § 22–3832 (recodified as D.C. code § 22–3232 (2001)). The court granted appellant's motion for judgment of acquittal on this count.

in the pursuit of the speeding car. Two other unmarked police cars joined Officer Key's pursuit. After pursuing the car for "about one mile" or "a few blocks," the officers were eventually able to stop the car on Stanton Road, SE, by blocking the car with a police cruiser. During the government's case in chief, none of the officers specifically testified that the police officers activated their sirens or red lights during their pursuit of the Honda.

According to the officers' testimony, appellant was driving the car and codefendant Wilson was sitting in the front passenger seat. After the car was stopped, Sergeant Johnson approached the driver's side and asked appellant for her license; she responded that she did not have one. One of the passengers produced a Maryland vehicle registration from the sun visor above the driver's side. The registration listed Cheryl Lee and Michael Hameroff. The license plate number on the car matched the number on the registration; however, the Vehicle Identification Number ("VIN") on the dashboard of the car was different from the VIN on the registration card. The VIN strip on the dashboard was partially detached, but another strip (with the same VIN) on the door was intact. An officer called in the VIN on the car, and the dispatcher reported the car was stolen. One of the car's rear side windows was missing and the window area was covered with plastic. There was no evidence that the locks, the steering wheel column or ignition had been tampered with. The car was being driven with the ignition key.

Sergeant Johnson obtained codefendant Wilson's consent to search the car, and attempted to open the trunk of the car with the ignition key. It did not, however, open the trunk. Wilson told the police officer that he did not know why the key would not open the trunk and explained that the car belonged to his aunt. After Sergeant Johnson informed Wilson of the stolen vehicle report, however, Wilson told the officer that he wanted to "come clean" and that he got the car from a "crack head" in Northwest Washington, D.C. The officers arrested appellant and Wilson.

Appellant did not present any defense witnesses or take the stand. Codefendant Wilson testified and presented one witness. Wilson testified that he got the car from a close friend whose aunt had left the car with him while she traveled overseas. Appellant, who was his girlfriend, was driving the car at the time because Wilson had been drinking at a party they had both attended. He did not realize they were being followed by the police until they came to a stop sign and a police car bumped their car. Wilson testified that he told the police it was his friend's car and that he assumed the names on the registration were those of his friend's aunt and uncle. On rebuttal, the government offered additional testimony by Sergeant Johnson that when he was pursuing the Honda in an unmarked police car, he had activated the flashing beacon light on the dashboard inside the windshield of the car, and was also blowing the horn to get the driver's attention.

At the close of the government's case, appellant moved for a judgment of acquittal, based in part upon the government's failure to prove that she knew they were using the car without the owner's consent.[3]

---

**3.** Appellant's counsel renewed the motion for judgment of acquittal at the close of codefendant Wilson's case and the trial court denied it, stating that the evidence was stronger be-

cause of codefendant's inconsistent statements regarding ownership of the vehicle. Appellant contends that the testimony of codefendant Wilson and any evidence in the

The prosecutor opposed the motion on the ground that appellant had initially fled from the police, which showed her consciousness of guilt. The trial court questioned the government's evidence of flight, and also noted that the government had presented "virtually no evidence" that the vehicle stopped by the officers in January 1995 was the same vehicle that was stolen from Ms. Hautala in 1994. The court granted judgment of acquittal on the count of receiving stolen property, reasoning that it would, under the circumstances of this case, require proof that the car in which appellant was stopped was the same car that was taken from Ms. Hautala six months earlier, which the government had failed to prove. The court, however, denied the motion as to the UUV charge on the ground that the identity of the owner of the vehicle was not in and of itself an element of the offense. The trial judge further concluded that the evidence was sufficient to support a conclusion that the defendants knew or had reason to know the car was being used contrary to the wishes of the rightful owner, "whoever that might be," though he did not specify what the evidence was. After deliberating for two hours, the jury convicted appellant and her codefendant of UUV.

## ANALYSIS

Appellant argues that there is insufficient evidence in the trial record to support a reasonable inference that she knew she was driving the Honda Accord without the owner's consent. She contends that the trial court specifically found that there was insufficient evidence in the government's case-in-chief that she tried to flee

from the police, and that there was no other evidence introduced at trial that would prove appellant's knowledge or guilt concerning unauthorized use. Appellant further points out that the lack of any evidence regarding the owner of the vehicle in question and when it was stolen undermines the government's evidence that appellant used the vehicle without the consent of the owner or some other person authorized to give consent. The government responds that appellant's flight from the police demonstrates that she knew she was driving a stolen car, and that there was sufficient evidence that the car in question was the stolen vehicle of Ms. Hautala, thus permitting the inference that appellant knew the car she was driving was stolen.

In considering the sufficiency of the evidence, "[w]e view the evidence in the light most favorable to the government, recognizing the province of the trier of fact to weigh the evidence, determine the credibility of the witnesses and to draw reasonable inferences from the testimony." *Dickerson v. United States,* 650 A.2d 680, 683 (D.C.1994) (citation omitted). "The evidence is deemed insufficient only if we conclude, as a matter of law, that no impartial [factfinder] could rationally find guilt beyond a reasonable doubt on the evidence presented." *Mitchell v. United States,* 683 A.2d 111, 114 (D.C.1996) (internal quotations omitted) (citation omitted).

In order to establish that appellant committed the offense of unauthorized use of a vehicle, the government must prove beyond a reasonable doubt: (1) that appel-

government's case rebutting that testimony and the alleged flight cannot be used against appellant in evaluating the sufficiency of the government's evidence against her. *See Mills v. United States,* 599 A.2d 775, 780 (D.C. 1991); *Dumas v. United States,* 483 A.2d 301,

305 (D.C.1984). The government concedes the point and contends that it does not rely on Wilson's testimony or Sergeant Johnson's rebuttal testimony in arguing the sufficiency of the evidence in its case-in-chief against appellant.

lant took a motor vehicle, or that she used, operated, or removed it from any place, or that she caused it to be taken, used, operated, or removed from any place; (2) that she operated it, or drove it, or caused it to be operated or driven for her own profit, use or purpose; (3) that she did so without the consent of the owner or some other person empowered to consent on the owner's behalf; and (4) that at the time the appellant took, used, operated, or removed the vehicle, or caused it to be taken, used, operated, or removed, she knew that she did so without the consent of the owner or some other authorized person. *See* D.C.Code § 22–3815;[4] *Kingsbury v. United States*, 537 A.2d 208, 210–11 n. 3 (D.C. 1988).

■ We agree with appellant that the evidence was insufficient to prove beyond a reasonable doubt that she knowingly used the vehicle without the consent of the owner (or other authorized person). First, regarding lack of consent of the owner, there was no evidence as to who was authorized to give consent to use the vehicle because the identity of the owner was never conclusively established, as there was no connection established between the car appellant was driving and the car that was stolen from Ms. Hautala. The government argues that lack of consent may be estab-

lished by circumstantial evidence, and contends that appellant's flight, the testimony of Ms. Hautala, the broken window and the different VINs on the car and registration card provided ample circumstantial evidence from which the jury could infer that the car belonged to someone else and that appellant did not have permission to operate it. *See Powell v. United States*, 135 U.S.App. D.C. 254, 258, 418 F.2d 470, 474 (1969) (holding that lack of consent may be established by adequate circumstantial evidence). While the government is correct that lack of consent may be established by circumstantial evidence, *see, e.g., id.*, and that the identity of the owner need not be proven, we do not agree that there was enough circumstantial evidence to prove beyond a reasonable doubt that appellant was using the vehicle without the permission of an authorized person. The evidence regarding the ownership of the vehicle was so uncertain that the trial court granted the motion for judgment of acquittal on the count of stolen property.[5] A missing window, covered in plastic, and the hardly obvious discrepancy in VIN numbers add too little to prove beyond a reasonable doubt that appellant was not authorized to drive the car.

■ There is even less evidence that appellant *knew* she was using the vehicle

---

4. D.C.Code § 22–3815 states, in pertinent part:

 (b) A person commits the offense of unauthorized use of a motor vehicle under this subsection if, without the consent of the owner, that person takes, uses, operates, or removes or causes to be taken, used, operated, or removed, a motor vehicle from a garage, other building, or from any place or locality on a public or private highway, park, parkway, street, lot, field, enclosure, or space, and operates or drives or causes the motor vehicle to be operated or driven for his or her own profit, use, or purpose.

5. The trial court stated, "[t]his case surprises me [because] of the glaring deficiency in evi-

dence as to whether this was even the car that this lady had stolen from her" as "there's virtually no evidence to conclusively say that." There was (unobjected) hearsay evidence that a WALES check reported the car as stolen. There were no further details about when or where the car had been stolen, however, making inapplicable the inference of knowledge from possession of recently stolen property. *Cf. United States v. Johnson*, 140 U.S.App. D.C. 54, 64, 433 F.2d 1160, 1170 (1970) (noting that stolen engine installed one month earlier in a car that had been stolen five months before permitted inference of knowledge from possession of "recently stolen" property).

without permission. The government's main contention is that appellant's flight from the police and the physical characteristics of the vehicle support a reasonable inference that appellant knew she was using the vehicle without the consent of the owner. We disagree. As a general proposition, evidence of flight, without more, is not enough to convict. *See In re T.T.B.*, 333 A.2d 671, 673 (D.C.1975); *Forsyth v. United States*, 318 A.2d 292, 294 (D.C. 1974). *T.T.B.*, upon which the government relies, is distinguishable because in that case the appellant not only was followed by a police cruiser with red lights and a siren and apprehended after a foot chase and two attempts to free himself after having been captured, but also was driving a stolen car without an ignition key. 333 A.2d at 673. This is in stark contrast to the instant case, where evidence that flight even occurred is tenuous. Here, appellant was initially followed by one unmarked police vehicle that "had its lights on." As the trial court noted when denying the government's request for a flight instruction, "What does that mean, he put the lights on? I would hope that at nine o'clock in the evening they'd have the lights on to begin with ... You're asking me to conclude that the record supports that the defendant knew that these were police officers trying to make her stop." [6] Although other police cars, some of which might have been marked, also joined, there was no testimony that any of them activated its siren or red lights and there is scant testimony about how closely or at which

point in the chase they followed appellant. The entire pursuit ended when appellant was stopped by a police cruiser blocking off an intersection after, at most, one mile.[7]

Moreover, the insubstantial evidence of flight was not coupled by much additional evidence that appellant knew she was using the vehicle without the owner's consent. While her boyfriend, Wilson, was caught lying about the car's ownership when he initially stated that the car belonged to his aunt and then confessed he obtained it from a friend, appellant professed absolutely no knowledge about the ownership of the vehicle. The government's argument that "an inference of guilt [of unauthorized use of a motor vehicle] may be drawn from the fact of exclusive possession of property recently stolen unless such possession is satisfactorily explained," as discussed earlier, is unavailing here because of the absence of any evidence that the vehicle she was driving was "recently stolen." *Fleming v. United States*, 310 A.2d 214, 216 (D.C.1973). In this case, even assuming the vehicle was stolen, there is no evidence as to when it was stolen. The only evidence of a stolen vehicle, that of Ms. Hautala, occurred six months before appellant was stopped, while in *Fleming* the vehicle was found only after six weeks. *See id.* at 218 ("the longer the time interval involved, the more doubtful the inference."). The government also fails to convince us and apparently did not convince the trial court, that a plastic

6. The government's argument that the officer's testimony that he had his "lights" on referred to a flashing light, is merely an invitation to jury speculation. It was only in rebuttal to the codefendant's evidence that the officer testified that the unmarked police car was flashing its lights and honking. This testimony cannot be taken into account in considering the sufficiency of the government's case against appellant, who moved for judgment of acquittal at the end of the gov-

ernment's case-in-chief and did not present any evidence in her defense. *See supra* note 3.

7. The testimony of the police officers is inconsistent as to how long appellant was followed before being stopped. Testimony ranged from "two or three blocks," "three to four blocks" or "about a mile."

window and a different key for the ignition and the trunk [8] were probative of appellant's knowledge that the car was stolen.

 To reverse, we must be able to conclude that the evidence, when viewed in favor of the government, "is such that a reasonable juror *must* have a reasonable doubt as to the existence of any of the essential elements of the crime." *Curry v. United States*, 520 A.2d 255, 263 (D.C. 1987). As in *Rivas v. United States*, 783 A.2d 125 (D.C.2001) (en banc), the evidence in this case "has the quality of a snapshot—a frozen instant in time and space—crystalized but devoid of explanatory context." *Id.* at 134. There is nothing in the physical characteristics of the car to provide a context for what is, at best, the slightest evidence of flight, such that even if appellant were fleeing from the police, a jury reasonably could infer that she was doing so because she knew she did not have authorization to drive the vehicle—the requisite state of mind for conviction of UUV. Therefore, we conclude that the evidence was insufficient to convict appellant of UUV, and the judgment is

*Reversed.*

**8.** The trial court stated, "[t]his argument is so absurd, I'm not even going to take up any more time with it .... Most of the vehicles that I've owned recently have separate keys for the ignition and the trunk."