Benjamin ZACARIAS, Appellant

v.

UNITED STATES, Appellee

No. 03–CF–1496.

District of Columbia Court of Appeals.

Argued April 21, 2005.
Decided Oct. 6, 2005.

Jerry Ray Smith, appointed by the court, for appellant.

Bernard J. Delia, Assistant United States Attorney, for appellee. Kenneth L. Wainstein, United States Attorney, and John R. Fisher, David B. Goodhand, Nihar R. Mohanty, and L. Jackson Thomas, II, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY, WAGNER,* and GLICKMAN, Associate Judges.

* Judge Wagner was Chief Judge of the court at the time of argument. Her status changed to

TERRY, Associate Judge:

Appellant Benjamin Zacarias and his co-defendant, William Delgado, were convicted of receiving stolen property ("RSP") and unauthorized use of a vehicle ("UUV").[1] Zacarias contends on appeal that the trial court erred by allowing the indictment against him to be constructively amended, and by permitting the government to rely on hearsay testimony to establish ownership of the vehicle. We affirm.

I

In the early morning hours of February 10, 2003, Officer Jeffrey Newbold saw appellant driving a black four-door Honda, bearing Massachusetts license plates, at a "very high rate of speed" along Riggs Road, Northeast. Seated in the passenger seat was another man, later identified as William Delgado. Officer Newbold and his partner, Officer Abdul Harim, pulled appellant over and asked him for his driver's license, registration, and proof of insurance.

After identifying himself as "John Bolson," appellant told the officers that he had forgotten his driver's license and that the car belonged to a friend. As appellant searched the glove compartment for the registration, Officer Harim noticed that the car's ignition had been "totally ripped out." The officers promptly arrested appellant and Mr. Delgado. A fingerprint check later established that appellant's true name was Benjamin Zacarias.

The car, registered to Robert Lanning of Massachusetts, was in the possession of his daughter, Rebecca Lanning, who lived in the District of Columbia.[2] On the morning of February 10, after receiving a call from the police, Ms. Lanning checked outside her apartment in Northwest Washington, where she had parked the night before, and discovered that the car was missing. She so advised the police. Ms. Lanning had given neither appellant nor Mr. Delgado permission to take the car.

Appellant testified that he did not steal the car or know that it had been stolen. He said that on the evening of February 9, his friend José Luis Muñoz Otero drove him to a party in Langley Park, Maryland, which Mr. Delgado also attended. At the party appellant was talking with another friend, Iris Vasquez, until an acquaintance known as "Poncho" interrupted them. When appellant asked for a ride, Poncho agreed to lend appellant his car. Later, Poncho started the engine, but appellant said he was standing too far from the car to notice how he did it. Appellant testified that "nothing was broken" inside the car, but he acknowledged that it was dark, and he noticed only that a black scarf was covering the car's ignition.[3]

Three defense witnesses corroborated portions of appellant's testimony. Mr. Muñoz testified that he picked up appellant and drove him to Langley Park on February 9. Ms. Vasquez recalled attending a party in February where she talked with appellant off and on throughout the night. Mr. Delgado testified that at the

Associate Judge on August 6, 2005.

1. Mr. Zacarias and Mr. Delgado were also indicted for destruction of property and first-degree theft, but the jury acquitted them of those charges.

2. The indictment stated that the car was the "property of Rebecca Lanning."

3. Appellant also stated that an unidentified fifteen-year-old friend of Poncho who rode with him and Mr. Delgado actually stole the car, but he was released by the police after they learned he was a juvenile.

party appellant told him that a friend had lent him the car. Mr. Delgado did not notice anything amiss with the ignition, but he too saw the black scarf covering the steering column. He also confirmed appellant's account of the juvenile passenger.

## II

Both of appellant's arguments on appeal relate to the ownership of the stolen car. He contends that the government constructively amended the indictment, which named Rebecca Lanning as the car's owner, when it proved at trial that Robert Lanning was the actual owner. Appellant also argues that the government established Mr. Lanning's ownership through his daughter's inadmissible hearsay testimony.

### A. The Alleged Constructive Amendment

■ A defendant cannot "be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *see Stirone v. United States*, 361 U.S. 212, 219, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Such a "deviation between the charges in the indictment and the proof at trial can constitute a variance from, or an amendment (literal or constructive) of, the indictment." *Pace v. United States*, 705 A.2d 673, 676 (D.C. 1998) (citation omitted). We have "found a constructive amendment where the jury convicted the defendant of a *factually* different offense from that presented to the grand jury." *Wooley v. United States*, 697 A.2d 777, 785 (D.C.1997) (Farrell, J., joined by Steadman, J., concurring) (emphasis in original); *see Pace*, 705 A.2d at 676. In such cases, our standard of review requires us to consider whether the government at trial relied on " 'a complex of facts distinctly different from that which the grand jury set forth in the indictment,' rather than 'a single set of facts' common to both." *Wooley*, 697 A.2d at 786 (citation omitted).[4]

■ When, as in this case, an objection to an inconsistency between the allegations in the indictment and the eventual proof at trial has been adequately preserved, this court has stated that a constructive amendment mandates "reversal *per se* . . . without the need for any showing of prejudice." *Carter v. United States*, 826 A.2d 300, 303 (D.C.2003) (citation omitted).[5] On the other hand, a mere variance

---

**4.** We have also found a constructive amendment when "the jury convicted the defendant of a different offense *legally understood* from that presented to the grand jury." *Wooley*, 697 A.2d at 785 (emphasis in original); *see Pace*, 705 A.2d at 676. Appellant is not contending here that he was convicted of "a different offense legally understood"; his claim is only that the facts before the grand jury, as reflected in the indictment, were different from the facts proved at trial.

**5.** We have also held in two recent cases that if a claim of constructive amendment was not preserved in the trial court, reversal is not required unless the appellant can demonstrate plain error. *(Danny) Johnson v. United States*, 812 A.2d 234, 242 (D.C.2002), *cert. denied*, 538 U.S. 1045, 123 S.Ct. 2098, 155

L.Ed.2d 1082 (2003); *Smith v. United States*, 801 A.2d 958, 962 (D.C.), *cert. denied*, 537 U.S. 1011, 123 S.Ct. 479, 154 L.Ed.2d 413 (2002). These holdings in turn were based on two Supreme Court decisions, *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), and *(Joyce) Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). As we noted in *(Danny) Johnson*, the Court held in *Cotton* that a constructive amendment is not a "structural error," which means that an appellant "must show that he was prejudiced in order to prevail on this particular claim." 812 A.2d at 243 (citing *Cotton*, 535 U.S. at 632, 122 S.Ct. 1781). The government, citing *(Danny) Johnson*, argues that even if there was a constructive amendment here, appellant must show prejudice in order to obtain

between the allegations in the indictment and the evidence at trial "does not warrant reversal unless the appellant shows prejudice." *Pace,* 705 A.2d at 676; *see Wooley,* 697 A.2d at 779. Specifically, a variance is prejudicial if it either deprives the defendant of an adequate opportunity to prepare a defense—*i.e.,* fails to give him proper notice of the crime with which he is charged—or exposes him to the risk of another prosecution for the same offense, which would violate the Double Jeopardy Clause of the Constitution. *Byrd v. United States,* 579 A.2d 725, 727–728 (D.C. 1990); *accord, (Oliver) Johnson v. United States,* 613 A.2d 1381, 1384 (D.C.1992).

Before trial, the government notified the court and defense counsel that Robert Lanning was the car's true owner, but that it had decided not to seek a new indictment because the name of the actual owner was mere "surplusage"; that is, it was not an essential element of any of the charged offenses, and Rebecca Lanning in any event had a "property interest" in the stolen car. Defense counsel argued that the name of the owner was a basic element of UUV and RSP, but the court disagreed and overruled his objection to the government's proof of ownership.

■■■ The case law in this jurisdiction distinguishing a variance from a constructive amendment is quite clear. Given that case law, we are not persuaded that the discrepancy here amounted to a constructive amendment. "An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon

them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Gaither v. United States,* 134 U.S.App. D.C. 154, 164, 413 F.2d 1061, 1071 (1969) (emphasis in original; footnotes omitted), quoted with approval in *Scutchings v. United States,* 509 A.2d 634, 636 (D.C.1986); *accord, e.g., (Oliver) Johnson,* 613 A.2d at 1384. "A variance becomes a constructive amendment ... when 'facts introduced at trial go to an essential element of the offense charged, and the facts are different from the facts that would support the offense charged in the indictment,'" *Scutchings,* 509 A.2d at 637 (citation omitted), or when the possible bases for conviction have somehow been broadened. *Wooley,* 697 A.2d at 784. We therefore must determine whether the government in this case relied on a complex of facts "distinctly different" from those presented in the indictment, and specifically whether the name of the owner is an essential element that must be proved in either a UUV case or an RSP case.

■■■ We hold that the evidence showing that the owner of the car was someone other than the person named in the indictment was only a variance and that it was not fatal. In a UUV case, the government must prove that the defendant took a vehicle "without the consent of the owner or some other person empowered to consent on the owner's behalf." *Agnew v. United States,* 813 A.2d 192, 197 (D.C. 2002). Similarly, to prove an RSP charge, the government must show that property

reversal. We need not decide this point, because—as we shall explain—the inconsistency of proof in this case was not a constructive amendment, and in any event appellant was not prejudiced. Whether our statement in *Carter* that a showing of prejudice is unneces-

sary needs to be re-examined, in light of *Cotton* and *(Joyce) Johnson,* is likewise an issue that we can defer to another day. *But see, e.g., Ex parte Bain,* 121 U.S. 1, 6–8, 7 S.Ct. 781, 30 L.Ed. 849 (1887).

of value was received by the defendant with an intent to defraud and with knowledge or reason to believe that the property was stolen. *Blackledge v. United States,* 447 A.2d 46, 48–49 (D.C.1982). But there is no requirement in either type of case that the government prove the actual name of the owner, because that is not an essential element of the offense. The government's evidence did not prove a "complex of facts" that was "distinctly different" from the facts alleged by the grand jury. *Jackson v. United States,* 123 U.S.App. D.C. 276, 279, 359 F.2d 260, 263, *cert. denied,* 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966); *see Carter,* 826 A.2d at 306–307 (finding no constructive amendment when the evidence at trial described the same occurrence between the same persons as alleged in the indictment).

Appellant contends nevertheless that the fact that the inconsistency between the indictment and the proof at trial does not involve an essential element of the charges does not by itself prevent the change from amounting to a constructive amendment. To support this contention, appellant relies on *Wooley,* in which the defendant was indicted for possessing heroin, but the trial evidence established that he actually possessed cocaine. Appellant's reliance on *Wooley* is misguided. In that case we held that an indictment had been constructively amended because there were critical statutory distinctions between the two types of controlled substances which a later revised indictment disregarded. The type of drug named in the initial indictment, while not an element of the crime, influenced the manner of drug testing undertaken by the police and the sentences that could apply in the event of conviction. *See Wooley,* 697 A.2d at 784 ("Heroin and cocaine are controlled substances which the legislature has identified by different 'schedules,' tests, and characterizations of abuse"). The revised indictment therefore modified the controlled substance element beyond what the grand jury contemplated. But *Wooley* does not persuade us in this case that the evidence at trial—identical in every respect to the facts alleged in the indictment except for a corrective change which more accurately identified the car's true owner—somehow proved factually different offenses from those charged in the indictment. The legislative prescriptions that shaped our decision in *Wooley* are simply not present here.[6]

■ Because the change in the named owner was merely a variance, and not a constructive amendment, appellant must demonstrate prejudice. *See Pace,* 705 A.2d at 676 (a variance "does not merit reversal unless the appellant shows prejudice"). Appellant cannot show prejudice in this case because his defense was unaffected by the variance. *See Carmon v. United States,* 498 A.2d 580, 582–583 (D.C.1985) (in shoplifting case, government's failure to prove corporate status of store from which items were taken was not fatal because shoplifting statute merely required proof that items were "personal property of another"; "[i]t was not necessary to prove exactly who the owner of the [property] was, but merely that the owner ... was someone other than appellant"); *Ingram v. United States,* 392 A.2d 505, 507–508 (D.C.1978) (in burglary case, no prejudice

**6.** Similarly, appellant relies on *Stirone,* in which the defendant's conviction was overturned because the indictment alleged illegal interference with shipments of sand and the evidence at trial established illegal interference with shipments of steel. The Supreme Court held in *Stirone* that the government had effectively broadened the possible basis for conviction beyond that presented in the indictment. *See* 361 U.S. at 218–219, 80 S.Ct. 270. *Stirone* is inapposite here because both the indictment and the proof at trial involved the same vehicle; the only factual difference related to the identity of its owner.

despite variance in proof of named owner of burglarized premises); *Bord v. United States*, 76 U.S App. D.C. 205, 206, 133 F.2d 313, 314 (1942) (in housebreaking and larceny case, no prejudice despite government's "failure to prove the identity and corporate character of the occupant," because "[w]hoever occupied [the building], it is obvious that appellant had no right to break and enter it or to remove property from it"). Appellant's defense at trial was not that he had Robert Lanning's permission to drive the car, but that he did not know the car was stolen at all. He made no showing, when the ownership issue arose, that his defense would have been different in any respect if the indictment had named Robert Lanning, rather than Rebecca Lanning, as the owner of the car.

Moreover, since a UUV prosecution requires only that the government prove that the vehicle was used without the consent of "the owner or some other person empowered to consent on the owner's behalf," *Agnew*, 813 A.2d at 197, the naming of Rebecca Lanning in the indictment—someone "empowered to consent" on her father's behalf—was sufficient to identify her as the complaining witness.[7] No question was ever raised at trial about whether Ms. Lanning was so "empowered." The name of the actual owner, as *Agnew* makes clear, is not an element of the offense required to be alleged and proven in every UUV case. Likewise, in an RSP case, the government must prove that the defendant knew (or had reason to believe) that the property at issue was stolen, but the name of its owner is not an essential element of the offense. *Blackledge*, 447 A.2d at 48–49.

Although the grand jury may not have known that Robert Lanning was the car's true owner, ample evidence at trial (including Rebecca Lanning's testimony) could permit a reasonable trier of fact to conclude that appellant used the car without authorization. Both Ms. Lanning and Officer Newbold identified the car from photographs, and Ms. Lanning further identified it by its license number and by certain stickers in the window. Given these facts, along with the circumstances surrounding appellant's arrest while driving the car (including, in particular, the "ripped out" ignition), a jury could reasonably find that Rebecca Lanning, as the true owner's daughter, enjoyed a possessory interest in the car and that neither she nor her father authorized appellant's use of the vehicle. *See Powell v. United States*, 135 U.S.App. D.C. 254, 257, 418 F.2d 470, 473 (1969) (in a UUV case, government need not foreclose every possible source of authorization when a conclusion contrary to the proven facts "could have derived only from a complete rejection of what is normal human experience").

Appellant's claim of constructive amendment, properly interpreted as a permissible variance, fails because he has not shown prejudice. He is not at risk of being tried twice for the same offense, and he has not shown that his defense would have been any different if there had been no variance.

### B. *Evidence of Ownership*

■ Appellant argues that Rebecca Lanning's testimony about her father's ownership of the car, to which he objected in the trial court, was inadmissible hearsay. We find no error.

■ We have often recognized that the trial court "is entrusted with broad discretion to determine the substance, form, and quantum of evidence which is to be presented to a jury." *(William) Johnson v. United States*, 452 A.2d 959, 960 (D.C.

---

7. At oral argument, the government informed us that it usually names the owner in a UUV indictment simply to forestall any need for a bill of particulars.

1982). We review such determinations only for abuse of discretion. *Perritt v. United States*, 640 A.2d 702, 705 (D.C. 1994). Whether a particular statement is inadmissible as hearsay or admissible under an exception to the hearsay rule, however, is a question of law that we review *de novo*. *See Brown v. United States*, 840 A.2d 82, 88 (D.C.2004).

At trial, the prosecutor asked Rebecca Lanning, "Do you know who the registered owner of the car is?" Defense counsel objected. After the court said, "Overruled," Ms. Lanning answered, "My father."[8] Appellant now argues that "the reason Rebecca Lanning believed her father legally owned the car is simply because that is what he told her." A non-owner of a "titled object" such as a car, he contends (without any citation of authority), cannot "testify as to who actually does legally own the property without . . . repeating information that he has gathered from some other source—either from a report made by another person or from information contained in a legal document." That is not necessarily true. Ms. Lanning, as the owner's daughter, was in a position to observe conduct and events that would impart personal knowledge of the fact that the car belonged to her father. As the government points out, it is quite possible, for example, that she was present when her father purchased the car or that she researched its ownership for insurance purposes.

But we need not engage in such suppositions or assumptions. It is enough to conclude that appellant's hearsay challenge to Ms. Lanning's testimony is based entirely on speculation and conjecture, and that he has therefore failed to establish that it was hearsay at all. Ms. Lanning was never asked how she knew that the car belonged to her father, and thus there is no basis to believe that her only source of that information was what her father told her. Indeed, her knowledge of the car's ownership may well have been based on the most probable scenario of non-assertive conduct—her father's routine exercise of dominion and control over a vehicle that he owned and permitted his daughter to use at his pleasure. Even if the record established (which it does not) that her testimony was hearsay, its admission would be harmless because the car was indisputably in her possession, and appellant did not claim that he had her permission, or her father's, to use it. We note that Ms. Lanning testified affirmatively that she never gave either appellant or Mr. Delgado permission to use the car. Defense counsel did not object to this testimony, nor would any objection have been valid, because the testimony went directly to whether Ms. Lanning, as "some other person empowered to consent on the owner's behalf,"[9] had authorized its use by appellant. We conclude that the trial court did not abuse its discretion, and committed no error of law, in allowing Ms. Lanning to testify that her father was the registered owner of the car.

The judgment of conviction is

*Affirmed.*

---

8. Actually, it is not entirely clear that the objection was based on a claim of hearsay. When the prosecutor asked Ms. Lanning if she knew who the registered owner of the car was, she started to reply but was interrupted by defense counsel, who said simply, "Objection, Your Honor." The word "hearsay" was never mentioned, either by counsel or by the court. We assume nevertheless, for the sake of argument, that counsel's objection was sufficient to preserve the hearsay claim that appellant now argues on appeal.

9. *Agnew*, 813 A.2d at 197.