996 A.2d 1286 (2010)
In re D.P., Appellant.
No. 07-FS-1351.
District of Columbia Court of Appeals.
Argued April 28, 2010.
Decided June 3, 2010.
Mara Silver, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for D.P.
Sidney R. Bixler, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and *1287 Rosalyn Calbert Groce, Deputy Solicitor General, were on the brief, for the District of Columbia.
Before GLICKMAN and OBERLY, Associate Judges, and TERRY, Senior Judge.
OBERLY, Associate Judge:
After a bench trial, the Superior Court adjudicated D.P. a delinquent, finding that D.P. committed the offenses of unauthorized use of a motor vehicle (UUV), D.C.Code § 22-3215 (2001), receiving stolen property (RSP), D.C.Code § 22-3232(a) (2001), and theft, D.C.Code § 22-3211 (2001). We conclude that the evidence that D.P. possessed the requisite mens rea for any of the three charges was insufficient as a matter of law. Accordingly, we reverse the adjudication of delinquency.
At trial, the government presented evidence that on December 12, 2006, Janice Pugh reported her Ford Taurus stolen from the parking lot in front of her apartment building. Pugh did not know who took the car and testified that she had not given anyone, including D.P., permission to use it.
The Taurus was discovered on December 13, 2006, approximately two blocks from Pugh's apartment, with D.P. and several others inside. Officer Williams, one of the officers at the scene, testified that he was working undercover that night in an unmarked police car, but wearing a vest bearing the word "POLICE." Williams testified that when he approached the Taurus, D.P. and friends got out of the car and tried to run away. (According to a friend of D.P.'s, the police car in which Williams was riding hit the driver's door of the Taurus.) Williams caught D.P. approximately 30 feet away from the vehicle, and arrested him on the spot. Although there was conflicting testimony on this point, the trial court found that D.P. was a back seat passenger in the car; the government does not dispute this finding, and we shall not reexamine it.
Williams testified that he saw from the outside of the car that the car's ignition was "punched," but did not indicate where in relation to the car he was when he made this observation. ("`Punched' is a term used to describe an ignition that is completely removed from the car so that it can be driven without a key." Reyes v. United States, 933 A.2d 785, 789 n. 3 (D.C.2007).) The picture of the ignition entered into evidence was taken from the front seat passenger's vantage point, and no photographic evidence from the vantage point of a back seat passenger was presented. Aside from the punched ignition, there was no evidence that the car had any visible damagethe windows were intact and there was no evidence of damage to the car doors. And although Pugh testified that one of the car's doors was damaged when the car was returned to her, she stated that "[y]ou can't see the damage."
"Proof beyond a reasonable doubt," we have explained "is not merely a guideline for the trier of fact; it also furnishes a standard for judicial review of the sufficiency of the evidence." Rivas v. United States, 783 A.2d 125, 134 (D.C.2001) (en banc). Thus, although in a sufficiency challenge "[j]udicial review is deferential," this "does not mean that appellate review of sufficiency of the evidence is toothless. We do not fulfill our duty through rote incantation of these principles followed by summary affirmance." Id. (quotation marks omitted). Rather, "[w]e have an obligation to take seriously the requirement that the evidence in a criminal prosecution must be strong enough that a jury behaving rationally really could find it persuasive beyond a reasonable doubt." Id.
*1288 The reasonable doubt requirement thus "means more than that there must be some relevant evidence in the record in support of each essential element of the charged offense. The fact that evidence is relevant does not automatically make it sufficient to support a criminal conviction. Slight evidence is not sufficient evidence; a `mere modicum' cannot `rationally support a conviction beyond a reasonable doubt.'" Rivas, 783 A.2d at 134 (quotation marks and citation omitted). And although a "jury is entitled to draw a vast range of reasonable inferences from evidence, it may not base a verdict on mere speculation." Id. (quotation marks and editing omitted). Thus, the evidence "is insufficient if, in order to convict, the jury is required to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation. In short, if the evidence, when viewed in the light most favorable to the government, is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime, then the evidence is insufficient and we must say so." Id. (quotation marks, citation, and editing omitted).
In this case, to prove that D.P. committed each of the offenses with which he was charged, the government was required to prove beyond a reasonable doubt that D.P. knew that the Taurus was stolen. See In re C.A.P., 633 A.2d 787, 792 (D.C. 1993) (to prove UUV, "the government must show ... that the passenger was present in the vehicle with knowledge that the vehicle was being operated without the owner's consent"); In re P.A.S., 434 A.2d 461, 463 (D.C.1981) (to prove RSP, government must demonstrate "that the individual receiving the property had guilty knowledge that it was stolen"); In re D.D., 775 A.2d 1096, 1098 (D.C.2001) (per curiam) (to prove theft, government must prove that the defendant intended wrongfully to obtain or wrongfully to use the property of another). Relying on the fact that the ignition was punched and D.P.'s flight following police arrival on the scene, the government argues that it made this showing. We disagree.
As for the punched ignition, the trouble with the government's position is that, unlike the facts in the cases cited by the government, in this case there was no evidence that the ignition was visible to a person in D.P.'s position in the car.[1] Nor did the government introduce evidence that in addition to having a punched ignition, the Taurus was so badly damaged as to warrant an inference that D.P. knew that it was being used without the owner's consent.[2] On these facts, the trial court's *1289 conclusion that it was a matter of "common sense" that D.P. would have seen the ignition is not supported by the evidence, and we therefore must reject that finding. See Rivas, 783 A.2d at 134.
As evidence of D.P.'s guilty knowledge we are thus left with D.P.'s flight, and that is not sufficient. As the Supreme Court recognized long ago, "it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses." Alberty v. United States, 162 U.S. 499, 511, 16 S.Ct. 864, 40 L.Ed. 1051 (1896); id. at 510, 16 S.Ct. 864 ("there are so many reasons for flight consistent with innocence that it scarcely comes up to the standard of evidence tending to establish guilt") (quotation marks omitted). Consistent with this observation, our case law is clear that although flight can be probative of guilt, "evidence of flight, without more, is not enough to convict." Agnew v. United States, 813 A.2d 192, 198 (D.C.2002); see also In re Q.L.J., 458 A.2d 30, 32 (D.C. 1982) (per curiam) (similar). In this case, if the trial had revealed that the punched ignition was visible to someone in the backseat of the Taurus, or if there had been other evidence of D.P.'s guilty knowledge, the government would have had a stronger case.[3] But flight alonenot coupled with any other indicia of guiltis all that we have. Because "[a]bsent anything more, there is no more basis for attributing [D.P.'s] flight to [consciousness of guilt] than to a purpose consistent with innocence," we are constrained to hold that the government failed to sustain its burden of showing beyond a reasonable doubt that D.P. committed the offenses of UUV, RSP, and theft. Bailey v. United States, 416 F.2d 1110, 1112, 1115 (D.C.Cir.1969) (evidence insufficient for robbery conviction where defendant had been seen with robber and fled when someone yelled, "[l]ook, they're robbing him," at time of robbery).[4]
The adjudication of delinquency is
Reversed.
GLICKMAN, Associate Judge, dissenting:
Four persons were sitting in a parked Ford Taurus that had been stolen only hours earlier. The car's ignition was "punched." At the approach of a police officer, all four occupants of the Taurus abruptly sprang out of the car and took *1290 flight. Was that a coincidence? I think not. I think it enabled the trier of fact in this case to infer beyond a reasonable doubt that the occupantsincluding D.P., who was sitting in the right rear passenger seatdid not want to be caught because they knew they were in the Taurus "without the owner's consent."[1] Considered in isolation, neither the punched ignition nor D.P.'s flight may have sufficed to prove his culpability, as my colleagues conclude.[2] But even if "none of the individual items of proof tended in themselves to show guilty knowledge," that does not mean "the combination of all the circumstantial facts proved was an equally insufficient basis from which" such knowledge could be inferred.[3] In my opinion, "[w]hen viewed collectively the facts here argue against an innocent explanation" for D.P.'s conduct.[4]
Isn't the most natural and obvious explanation for D.P.'s attempt to flee that he knew he did not belong in the stolen and damaged car? Why else would he have fled at the first sign of the police when he was doing nothing (else) wrong?[5] It is not true that "flight alonenot coupled with any other indicia of guiltis all that we have" here.[6] What we have is D.P.'s flight "coupled with" his and his equally jittery friends' unlawful presence in a recently stolen vehicle featuring a punched ignition and damaged steering column. It will not answer to quote the admonition that "men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses."[7] D.P. would have had no reason to fear being apprehended as a guilty party or having to appear as a witness if he was unaware he and his friends were trespassing in someone else's car.
I appreciate that one may hypothesize other explanations for D.P.'s conduct that would be consistent with innocence. (Hypothesize we must, inasmuch as D.P. did not take the stand and explain why he acted as he did.) D.P. could have sought to avoid the police because he feared he was about to be arrested for misconduct unrelated to his presence in the Taurus, or for other idiosyncratic reasons. Or perhaps he entered the Taurus innocently enough and realized to his chagrin that it was a "hot car" only when the police officer happened on the scene. But in order to prove D.P. guilty beyond a reasonable doubt, the government was not required to "negate every possible inference of innocence."[8] "[T]he test for sufficiency of evidence is not whether a reasonable doubt was possible, but rather whether a finding of no reasonable doubt was possible."[9] In *1291 applying this test, our review must be "deferential, giving `full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"[10] I think it was reasonable for the trier of fact in this case to discount the hypothetically possible innocent explanations of D.P.'s behavior as too unsubstantiated and implausible to dispel the strong inference that D.P. knew he was in the Taurus without its owner's consent.[11]
I thus conclude there was sufficient evidence of D.P.'s mens rea for the court to find him guilty of unauthorized use of a vehicle (UUV). That conclusion does not carry over to the other offenses with which D.P. was chargedtheft and receiving stolen property. Unlike UUV, the latter offenses require the government to prove that the defendant actually or constructively possessed the stolen property at some point.[12] "A person's presence in a vehicle as a passenger, without more, is insufficient to prove that he possessed the vehicle,"[13] for it must be shown that he knowingly and intentionally exercised dominion or control over it.[14] The evidence in this caseincluding D.P.'s flight, though it bespoke his consciousness of guiltfell short of demonstrating D.P.'s dominion or control over the stolen Taurus; nor did the trial court find that he exerted such power over the car.[15]
Finally, to return to the UUV charge and a claim the majority finds it unnecessary to reach, D.P. also seeks reversal because there was no proof the Taurus was moved after he entered it. It is true this court has said that "at least some asportation is an element of the crime,"[16] but it is difficult to square that obiter dictum[17] with the language of the UUV *1292 statute itself. The statute makes it an offense to "operate[ ] or drive[ ]" a vehicle without the owner's consent.[18] "Operation" does not necessarily entail movement.[19] And it is at least arguable that the operation requirement was satisfied, given the testimony that the car radio was in use. But, as the government has never made that argument, and as the trial court evinced no reliance on it, I would be content to concede the point to D.P. and to remand for the trial court to enter an amended judgment on a finding of attempted UUV rather than the completed offense.
NOTES
[1] See, e.g., Banks v. United States, 902 A.2d 817, 819 (D.C.2006) (per curiam) (police officer testimony that from outside passenger side of car, he could see punched ignition, broken dashboard, and that motor was running without a key in the ignition allowed for inference that front seat passenger had knowledge car was stolen); In re D.M.L., 293 A.2d 277, 278 (D.C. 1972) (police officer testimony that removed ignition switch with wires hanging from the dashboard was "clearly visible to anyone in the rear seat of the automobile... warrant[ed] an inference that [back seat passenger] saw the ignition wires and had actual knowledge that the car was being used without the owner's consent").
[2] See In re C.A.P., 633 A.2d at 788-89, 792 (police officer testimony that from outside passenger side of the vehicle, she observed broken steering column taped with duct tape, bent key in ignition, and broken glass on back seat from smashed rear vent window warranted inference that front seat passenger knew that vehicle was being operated without owner's consent); see also Agnew v. United States, 813 A.2d 192, 199 (D.C.2002) ("even if appellant were fleeing from the police," evidence was insufficient to sustain a UUV conviction where there was "nothing in the physical characteristics of the car to provide a context for ... flight, such that ... a jury reasonably could infer that [appellant] was [fleeing] because she knew she did not have authorization to drive the vehicle").
[3] See In re R.K.S., 905 A.2d 201, 204, 207, 218 (D.C.2006) (there was sufficient evidence to establish that appellants knew that car was stolen when they "took off" in car after being stopped by police, and repeatedly looked back toward police vehicle over a "`15 to 17 mile' chase," and where appellants stated that they knew that the car was stolen); In re T.T.B., 333 A.2d 671, 673 (D.C.1975) (evidence was sufficient to find that appellant knew that car was stolen where there was evidence that in addition to fleeing, appellant was riding in car with out-of-state license plates, that occupants "peered suspiciously at a nearby police cruiser" and appellant "made two attempts to free himself after he was captured" by police).
[4] See also United States v. Flores, 564 F.2d 717, 718 (5th Cir.1977) (evidence of flight was insufficient to sustain conviction of knowing possession of marijuana with intent to distribute where defendant was passenger in truck containing marijuana and truck was involved in 100 miles-per-hour chase, but there was no evidence that marijuana was visible to defendant); United States v. Grose, 525 F.2d 1115, 1120 (7th Cir.1975) (evidence showing defendant's association with perpetrator of a crime, combined with evidence of defendant's flight, was insufficient to sustain defendant's conviction of robbery); R.M. v. State, 763 So.2d 1060, 1062 (Fla.Dist.Ct.App.1999) (evidence was insufficient to sustain trespass adjudication where defendant, a passenger in a stolen truck, fled from police).
[1] In re C.A.P., 633 A.2d 787, 792 (D.C.1993) (citing In re T.T.B., 333 A.2d 671, 673 (D.C. 1975)).
[2] Parenthetically, though, regardless of the internal configuration of the car, I think it was reasonable for the trial court to infer that the punched ignition was visible to D.P. when he was sitting in the seat diagonally behind it.
[3] United States v. Harris, 140 U.S.App.D.C. 270, 285, 435 F.2d 74, 89 (1970).
[4] Id.
[5] According to the defense witness whose testimony the trial court credited, D.P. merely was listening to the radio while waiting to be driven home.
[6] Ante at 1289.
[7] Id. (quoting Alberty v. United States, 162 U.S. 499, 511, 16 S.Ct. 864, 40 L.Ed. 1051 (1896)).
[8] Wheeler v. United States, 494 A.2d 170, 174 (D.C.1985).
[9] Harris, 140 U.S.App.D.C. at 284, 435 F.2d at 88 (emphasis in the original). "A court must deem the proof of guilt sufficient if, `after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Rivas v. United States, 783 A.2d 125, 134 (D.C.2001) (en banc) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)).
[10] Id. (quoting Jackson, 443 U.S. at 319, 99 S.Ct. 2781).
[11] My position that there was adequate proof of D.P.'s guilty knowledge is consistent with our en banc decision in Rivas. That case concerned a passenger who distanced himself from a car containing cocaine after police stopped the vehicle. We held the evidence sufficient to prove the passenger's knowledge of the cocaine, which was in plain view on the center console of the car; the evidence was deficient only because it did not also prove the passenger's intent to exercise dominion or control over the drugs. See, e.g., Rivas, 783 A.2d at 136-37 ("Assuming that the jury could conclude that Rivas did mean to distance himself while the police were around, that might reinforce the implication that he knew there was cocaine in the car and did not want to be connected with it, but it does not show also that he had some stake in the drugs himself.") (internal quotation marks and footnote omitted).
[12] See D.C.Code §§ 22-3211 (theft), -3232(RSP).
[13] In re R.K.S., 905 A.2d 201, 219 (D.C.2006) (internal quotation marks omitted).
[14] See Rivas, 783 A.2d at 129.
[15] See R.K.S., 905 A.2d at 219. The trial court specifically found there was no evidence to link D.P. to the original taking of the Taurus, and there was no testimony that he tampered with the vehicle or did anything other than sit in it with his friends and listen to the radio while waiting for a ride home.
[16] Allen v. United States, 377 A.2d 65, 67 (D.C.1977); but see Arnold v. United States, 467 A.2d 136, 139 (D.C.1983), rev'd on other grounds by Byrd v. United States, 598 A.2d 386 (D.C. 1991) (en banc) (stating, without citation, that proof of asportation is not necessary for UUV).
[17] An obiter dictum is a comment in a judicial opinion that is unnecessary to the decision and therefore not precedential (though it may be persuasive). See Albertie v. Louis & Alexander Corp., 646 A.2d 1001, 1005 (D.C. 1994). Although the Allen court expressed its agreement with the appellant's claim that asportation is an element of UUV, that was not the issue, and the case did not rest on that proposition. The holding of the case, that an indictment charging UUV does not have to allege whence or whither the vehicle was taken, would have been the same whether or not the car had to be moved at all.
[18] D.C.Code § 22-3215(b) (2001) (emphasis added).
[19] The UUV statute appears to equate "operation" with "use" of a vehicle. D.C.Code § 22-3215(b). "Use" likewise does not necessarily entail movement.